## L. J. POLK v. THE STATE.

### No. 742.   Decided October 26, 1910.

**1.—Theft—Concealing Stolen Property—Accomplice Testimony—Charge of Court.**

Where, upon trial of theft and receiving stolen property, there was evidence implicating two of the State's witnesses as accomplices and that their testimony was materially prejudicial to the defendant, the court's failure to instruct on accomplice testimony was reversible error. Following Winn v. State, 15 Texas Crim. App., 169, and other cases.

**2.—Same—Charge of Court—Concealing Stolen Property—Venue.**

Where, upon trial of receiving stolen property, there was evidence that the defendant received the alleged stolen property in Fisher County and took it into Taylor County, and there had it shipped under the name of the owner this, in contemplation of law, will be concealing the property in Taylor County and the latter county would have jurisdiction.

**3.—Same—Words and Phrases—Concealment.**

The word "conceal" as used in article 237, White's Code Criminal Procedure, is not to be given the literal construction of hiding, but the handling of property in a manner that would throw the owner off his guard in his search for the same would come within the definition of concealing stolen property.

**4.—Same—Distinction between Receiving and Concealing Property.**

Where, upon trial of receiving stolen property, there was evidence that the

defendant received the alleged property in one county and concealed it in another. the trial court should have drawn the distinction between receiving and concealing the property; for if defendant received the property in Fisher County and carried it into Taylor County the latter county would not have jurisdiction, unless he concealed it there.

**5.—Same—Charge of Court—Venue—Jurisdiction.**

Upon trial of receiving stolen property it was error in the court's charge to instruct the jury that a prosecution for concealing and receiving stolen property may be conducted in the county where the offense was committed or in any county into or through which the property was carried, received or concealed.

Appeal from the District Court of Taylor.    Tried below before the Hon. Thomas L. Blanton.

Appeal from a conviction of receiving and concealing stolen property; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Woodruff & Woodruff,* for appellant.—On the question of the court's charge on jurisdiction where a person is charged with receiving and concealing stolen property: White's Annotated Code Criminal Procedure, article 817, subdivision 9, and authorities there cited.

Upon question of court's failure to charge on accomplice testimony: Martin v. State, 36 Texas Crim. Rep., 632; Hankins v. State, 47 S. W. Rep., 992; Robinson v. State, 35 Texas Crim. Rep., 54; Conde v. State, 33 Texas Crim. Rep., 10; Puryear v. State, 28 Texas Crim. App., 73; Hamilton v. State, 26 Texas Crim. App., 206; Boren v. State, 23 Texas Crim. App., 28; Stone v. State, 22 Texas Crim. App., 185; Fuller v. State, 19 Texas Crim. App., 380; Howell v. State, 16 Texas Crim. App., 93, and cases stated in opinion.

*John A. Mobley,* Assistant Attorney-General, for the State.

McCORD, JUDGE.—This is an appeal from a conviction for fraudulently receiving and concealing stolen property, knowing the same to have been stolen, his punishment being assessed at two years confinement in the penitentiary. The indictment contained two counts— one charging the theft of the property, and the other fraudulently receiving and concealing same. The court submitted both counts to the jury. The case as made out by the State was circumstantial. The bill of indictment alleged the theft of cattle belonging to one Sorelle, in Fisher County, Texas, and that some parties drove some twenty head of cattle from the Davis Pasture, in Fisher County, Texas, to Trent, in Taylor County, Texas, on the 20th and 21st days of June, 1909, and that these cattle were loaded upon cars of the Texas & P. Railway Company and carried to Fort Worth and sold in the open market. There is some testimony that the cattle sold in Fort Worth belonged to Sorelle. The State in the trial of the case placed upon the stand one John Pursley. This witness testi-

fied that on June 20 he was at Sylvester, in Fisher County, and that on that day he saw Alvin Davis and this defendant; that Alvin Davis claimed to own the cattle and told him to go to a pasture and get some cattle and drive them to Trent; that Baron Goode was there also and witness says that about sundown as he was going to get the cattle he met the defendant; that Davis just told him to go and get the cattle and did not say what kind of cattle or point out any particular cattle, but said they were his. Davis did not tell him from whom he had got the cattle, did not tell him anything about the cattle; just told the witness to go and get a bunch of cattle out in his pasture. Witness says he just told him to get a load; that he had been working for Davis before that; that he was not familiar with the cattle that were in the pasture; that he had never seen the cattle before; that he passed nobody on the way from the house at Sylvester, where he lived, until he got to the creek and met the defendant; that it was about a mile and a half from his father's house to the Alvin Davis pasture, and that he left home about sundown. He said that he saw the defendant on Sunday morning but had no talk with him, and saw him no more until he came up on him down at the creek just a little after sundown; that he and the defendant went on to where the cattle were; that they had no talk whatever other than that they were talking about shipping the cattle; that there was no previous agreement that they were to meet there; that when he first rode up to where the defendant was defendant said, are you going to ship the cattle? and witness told him yes; that he had seen defendant, Goode, and Davis talking together that morning, but didn't know what they were talking about; that defendant told him that he wanted to go to Fort Worth, and if witness would let him have his pass to go down there on he would help witness drive the cattle to Trent; that thereupon they rounded up the cattle and started; that he saw a good many cattle in the pasture and he says they just cut out and rounded up a few. He further testified that he knew nothing about the brands of those they cut out. Witness continuing said that they cut the cattle out from the other cattle and carried them into a little pasture away from the big pasture; that no one was with him except Polk, defendant, but he saw Myrick at a distance; that they carried the cattle out of the little pasture into a lane through a gate and started about dark; that neither he nor Polk ate any supper that night; that they took some thirty head of cattle; that he knew nothing about the brands of the cattle and that he can not describe the cattle any other way than that they were cattle; that they went on from there to Trent. He said that after they had got three or four miles out a party whom he did not know overtook them and asked them where they were going, when witness replied to Eskota; that he did not tell this party that they were going to Trent; that they were in fact going to Trent, because they had been instructed to go there;

that he was working for Davis when he took the cattle; that Davis instructed him to ship the cattle to the Lee Live Stock Commission Company at Fort Worth; that Davis did not tell him how to sign the contract; that they got to Trent next morning at 10 o'clock; they held the cattle away from the station while one of them went down to see about the car. He says Davis had told him Sunday morning that he had already ordered the car for the cattle. The witness states that there is a branch road that runs from Sylvester and connects with the Texas & P. at Sweetwater; that he had shipped cattle from Eskota, in Fisher County, and that there was a brand inspector there, but that there was no brand inspector at Trent; that defendant went off with the cattle to Fort Worth and that he, witness, went back home taking defendant's horse with him. The State also placed upon the stand the witness S. B. Goode. This witness testified that he knew nothing about the taking of the cattle, was in no way connected with it, but that he went to Fort Worth on the 21st or the 22d of June, and when he got there he saw Polk and Davis there together in connection with some cattle and that he returned home with Polk, the defendant. Myrick testified that he lived but a short distance from Davis; that he saw Goode, Pursley and Polk at Davis' house on the morning of the 20th of June; that Davis and Polk went off one way on horseback and the witness Goode and Pursley went off another; that along late in the evening Pursley and Goode drove a bunch of cattle and put them in a small pasture that surrounded the house of Davis, and that after dark he saw Goode and Pursley drive the cattle away; that this was on Sunday night. He testified that he knew all the parties intimately and well; that he was close to them and that he knows that it was Goode and Pursley who carried the cattle away. Goode denied this.

The court in his main charge omitted to instruct the jury that if Pursley and Goode were accomplices, or if they believed they were accomplices, then before they could convict the defendant upon their testimony they would have to find that the same was true and that it showed the guilt of the defendant, and that the same was corroborated by other testimony tending to connect the defendant with the commission of the offense. Counsel in the motion for new trial complained of this error and it is insisted that the facts of the case called for such a charge and that the omission of the court so to instruct the jury is reversible error. It has been held in an unbroken line of authorities in this State that whenever there is evidence implicating the State's witness and his testimony is materially prejudicial to the defendant, it is incumbent on the trial court, whether asked or not, to give in charge to the jury the law governing that species of proof. See Winn v. State, 15 Texas Crim. App., 169; Parr v. State, 36 Texas Crim. Rep., 493; Kelley v. State, 34 Texas Crim. Rep., 412; Shulze v. State, 28 Texas Crim. App., 316; Anderson v. State, 20 Texas Crim. App., 312; Sitterlee v. State, 13

Texas Crim. App., 587. We are, therefore, of opinion that the court was in error in not so instructing the jury and the ground having been specifically complained of in motion for new trial, the case will have to be reversed.

It is further contended that the court erred in his charge to the jury in the following particular: The court instructed the jury that a prosecution for receiving and concealing stolen property may be conducted in the county where the offense was committed or in any county into or through which the property was carried, received or concealed. The contention here is that if the defendant received the property knowing it to have been stolen in one county and he carried it into another county, he could not be prosecuted therein, but would have to be prosecuted in the county in which he received the property. Article 237 of White's Code of Criminal Procedure provides: "The offense of receiving and concealing stolen property may be prosecuted in the county where the theft was committed, or in any other county through or into which the property may have been carried by the person stealing the same, or in any county where the same may have been received or concealed by the offender." Now, we gather from this article that a party who receives or conceals stolen property may be prosecuted in the county where the theft was committed and in this instance this may be done immaterially as to where the property was received. Second, or he may be prosecuted in the county where he receives the same from the thief who carries it into the county, or in any county where the same may be received or concealed, but if the thief brings the property into one county and delivers it to a man, or delivers it to the man in the county of the original taking and then the party who receives it carried it into another county, can he be prosecuted in the latter instance? This question was before our court in the case of Thurman v. State, 37 Texas Crim. Rep., 646, where this court held that the charge of the court was erroneous which instructed the jury that if the accused received the property in one county and brought it into another, that the latter county would have jurisdiction and that he could be prosecuted in said county. In construing the provision of the statute the court says: "But the language used is not in any other county through or into which the property may have been carried by the receiver, but by the person stealing the same. The charge does not proceed on the idea that the original taker carried the property into Bosque County, and there appellent received the same, but upon the idea that appellant received said property elsewhere, and carried it into Bosque County." But the distinction between the facts of this case and the Thurman case, supra, is that the indictment charges the defendant with both receiving and concealing the property. Therefore, if he received the property in Fisher County and carried it into Taylor County and concealed it there, then Taylor County would have jurisdiction, the bill of in-

dictment having alleged that he received and concealed the property. The word "conceal" is not to be given the literal construction of hiding, but the handling of property in a manner that would throw the owners off their guard in their search and investigation for the same. If defendant brought or assisted in bringing the cattle into Taylor County and there had them shipped to Fort Worth under the name of Davis, this, in contemplation of the law, would be concealing the property in Taylor County and, therefore, Taylor County would have jurisdiction. We would suggest to the trial court in this case that in charging the jury, he draw the distinction between receiving and concealing the property and that he should state to the jury in his charge that if defendant received the property in Fisher County and brought it into Taylor County, that Taylor County would not have jurisdiction. If, however, he received the property in Fisher County and brought it into Taylor County and there concealed it or handled it in such manner as might confuse the owners in their investigation of the whereabouts of their property, then and in that case Taylor County would have jurisdiction.

For the errors indicated the judgment will be reversed and the cause remanded.

*Reversed and remanded.*