12849

SIMPSON v. GENERAL EXCHANGE INS. CORP.

(152 S. E., 672)

*Messrs. Mann & Plyler,* for appellant,

*Messrs. Dean & Wyche,* for respondent, 

March 7, 1930.

The opinion of the Court was delivered by MR. JUSTICE
BLEASE.

This action was brought in the County Court for Green-
ville County upon an insurance policy protecting plaintiff, in-
sured, against loss by "theft, robbery, or pilferage" of a cer-
tain Buick sedan automobile in the sum of $1,140.

The facts giving rise to this action are these:

Plaintiff was in the "U-Drive-It" or delivery business in
the City of Greenville, this State, and on the 24th day of
November, 1927, while the policy was in force, rented the
automobile in question, without a driver, to one J. W. Harris
for a two hours' drive. Harris failed to return the car, *and
neither he nor the automobile has been heard from since.*
Plaintiff sustained a total loss.

Defendant admits the execution of the insurance policy
sued on, but seeks to escape liability thereunder by reason
of a certain provision contained in a rider, conceded to be
attached to the policy, set up in paragraph 2 of the answer as
an affirmative defense as follows: "Permission is granted for
the automobile described in this policy to be rented or leased
or used as a public or livery conveyance for carrying pas-
sengers for compensation, provided, however, that if the in-
surance under this policy be also against the perils of theft,
robbery, or pilferage, this company shall not be liable for any
loss or damage which the assured may sustain caused by the
fraudulent concealment or disposal of said automobile by any
rentee or lessee."

It seems to have been conceded at the trial by all parties
that the actual cash value of the automobile on the 24th day

of November, 1927, was $1,140, and that the insurance policy provided for the payment of only 75 per cent. of the actual cash value. At the conclusion of the testimony, his Honor, Judge Ansel, directed a verdict for plaintiff for $855, without interest, which amount was 75 per cent. of $1,140. Error is attributed to the trial Judge in so directing a verdict for plaintiff, and in not directing a verdict for the defendant.

The conduct of Harris in obtaining possession of the automobile in the circumstances amounted to *a theft* thereof at the time he obtained possession of same. *Simpson v. Palmetto Fire Insurance Co.,* 145 S. C., 405, 143 S. E., 184. *There is no evidence of fraudulent concealment or disposal of said automobile by Harris.* The rider relied upon, therefore, is not applicable. There was no error·in directing a verdict for plaintiff, and in refusing to direct a verdict for the defendant.

It is the judgment of this Court that the judgment of the County Court of Greenville County be affirmed.

Mr. Chief Justice Watts and Messrs. Justices Stabler and Carter concur.

Mr. Justice Cothran (dissenting) : I think that a very different question is presented in this case from what was decided in the case of *Simpson v. Insurance Co.,* 145 S. C., 405, 143 S. E., 184. It was there held that the act of one who hires an automobile under what has come to be the familiar "U-Drive-It" system for a limited time, under the obligation to return it, and who absconds with it and causes a total loss to the hirer, comes within the provision of a policy insuring the owner from loss by "theft, robbery, or pilferage"; that it amounted to a breach of trust with fraudulent intent, made larceny or "theft" by the criminal laws of this State, although the act was committed by one to whom the car had been intrusted by the owner under a renting contract, and that it came within the terms of the policy, for the manifest reason that there was, in the policy, no

exception in favor of the company to the effect that the act was that of a person to whom the car was rented.

A very different situation is presented in the case at bar:

The policy in the present case as originally issued, contained indemnity against the same acts of "theft, robbery or pilferage," *but it contained a specific exemption from loss from these causes while the automobile was being "rented under contract or leased."*

This did not give the plaintiff the protection that he sought, considering the nature of the "U-Drive-It" business in which he was extensively engaged, and for an additional premium a "rider" was attached to the policy which read as follows: "In consideration of an additional premium of $22.50 permission is granted for the automobile described in this policy to be rented or leased or used as a public or livery conveyance for carrying passengers for compensation, provided, however, that if the insurance under this policy be also against the perils of theft, robbery or pilferage, this company shall not be liable for any loss or damage which the assured may sustain *caused by the fraudulent concealment or disposal of said automobile by any rentee or lessee."*

The manifest purpose and effect of this "rider" was that, while the company extended its liability for theft, robbery, or pilferage to a case where that occurred while the car was rented, or leased, or used as a public or livery conveyance for carrying passengers for compensation, *it did not extend it to a case where the car was fraudulently concealed or disposed of by the person to whom it was rented or leased.*

As it was held in the *Simpson case* above cited that a fraudulent disposition of the car by the customer under these circumstances amounted to a *theft* of it, it seems necessarily to follow that the word "theft" may be substituted for the expression "fraudulently disposed of," in the rider; *it has been judicially determined that they mean the same thing.* So that, if it appears, as it does, that the rentee or lessee has fraudulently concealed or fraudulently disposed of the

car, the company, under the express terms of the policy, is exempt from liability. The facts are unquestioned that the customer gave a bogus check in the first instance for the hire of the car, drove it away, did not return it, and that neither he nor the car has since been heard of.

The case was tried before his Honor, Judge Ansel, of the Greenville County Court, and, upon the close of all of the testimony, counsel for the defendant made a motion for a directed verdict in its favor upon the ground: "The uncontradicted testimony shows that this car was either concealed or disposed of by a rentee or lessee, and under an endorsement constituting a part of the contract, liability under these circumstances is specifically excepted."

In refusing the motion his Honor ruled: "This is an action on a policy of insurance on a certain car mentioned in the policy. I have listened with pleasure and profit to both counsels, but according to my view of this, it falls under the *Simpson case* cited because the facts up to the question of this rider are exactly similar to that case and the Court in that case held the circumstances showed it was a theft on the part of Richey who had hired the car just as the facts in this case show the party, *Harris, did, according to my view, intend to steal it,* and there is no testimony that he fraudulently did away with it. According to that the company is liable for three-fourths of $1,140.00. The testimony of the plaintiff is that at the time this car was hired to this party it was worth $1,140.00—and that being the value of it, he can recover three-fourths of that amount which is $855.00, and for that I direct a verdict in favor of the plaintiff."

From the judgment entered upon this directed verdict the defendant has appealed mainly upon the ground of error in refusing the motion for a directed verdict.

Taking the conclusion of the presiding Judge as true that Harris *intended to steal the car,* about which there cannot be a doubt, it is clear that he was guilty of a fraudulent disposition of it, a breach of trust with fraudulent intent. His

Honor seems to think that, after Harris criminally deprived the owner of the possession of the car, although he absconded, taking the car with him, that it was essential that it be shown that thereafter he sold the car to some one; the disposition was complete if he never thereafter made a second disposition of it.

I think, therefore, that it has been abundantly shown that Harris has fraudulently disposed of the car.

The conclusion is equally irresistible upon the issue of a fraudulent concealment of the car:

Webster defines "conceal" as "to hide or withdraw from observation; to cover or keep from sight; to prevent the discovery of; to withhold knowledge."

In 12 C. J., 373, the word "concealed" is defined as "a word of plain interpretation, defined as to hide or withdraw from observation; to withhold from observation; to cover or keep from sight; to secrete; * * * to prevent the discovery of; to fail to disclose; to dispose of."

In *Polk v. State,* 60 Tex. Cr. R., 150, 131 S. W., 580, 582, it was held: "The word 'conceal' is not to be given the literal construction of hiding, but the handling of property in a manner that would throw the owners off their guard in their search and investigation for the same."

In *State v. Julien,* 48 Iowa, 445, it is defined as "to keep from sight" or discovery.

The same definition is given in *Gill v. Ins. Co.,* 11 Ariz., 232, 95 P., 89, 90, where the Court said: " * * * for to conceal means purposely to keep from sight or discovery."

"A thing is secreted or concealed from an officer of the law, and indeed from any one, when the seeker cannot find it, and it is still concealed or secreted when such seeker knows perfectly well who controls it, who has hidden it, and who can reveal it if he desires." *U. S. v. Phillips* (D. C.), 196 F., 574, 575.

The word conceal means "to hide, cover up, or secrete physical objects from sight or observation." *Boyer v. State*, 169 Ind., 691, 83 N. E., 350, 352.

"To 'conceal' is to hide, withdraw, remove, or shield from observation; cover up or keep from sight." Century Dictionary; *In Re Shoesmith* (C. C. A.), 135 F., 684, 685.

"To conceal is: 'To hide or withdraw from observation; to cover up or keep from sight; to prevent the discovery of; to withhold knowledge of.'" *In re Glazier* (D. C.), 195 F., 1020, 1021.

Webster defines "dispose" as "to put out of the way."

In *Collins v. Com.*, 141 Ky., 564, 133 S. W., 233, 234, it was held that one who had joined a pooling contract with other tobacco growers, and had removed his tobacco out of the county for the purpose of selling it in another county, in violation of his agreement, was guilty of disposing of the tobacco in the county in which he lived, contrary to the criminal statute punishing disposing of tobacco under a pooling contract. The question largely at issue in that case was the proper county of trial. The Court said: "The act of removal without the consent of the selling agents put it out of their power to grade or sell the tobacco as provided by the pooling contract, and, as the removal of it by appellant was with the intent to sell it in violation of the pooling contract, he thereby unlawfully disposed of it, even before the act of sale, within the meaning of the contract; and in so doing subjected himself to the statutory penalty."

It does not require a stretch of the imagination to divine what the absconding customer intended to do with the stolen car; he could have intended only one thing—to sell it and pocket the money. Every mile he traveled in his flight was putting that much more distance between the owner and his car, concealing it from him and obstructing his investigation. The plaintiff himself says that his loss is total; that he sent out 200 cards relating to the theft, notified the theft agency in Atlanta, and offered a reward of $25; it can but be as-

sumed that the thief not only concealed it fraudulently, but disposed of it.

It appears to me indisputable that the testimony is susceptible of only one inference, and that is that the absconding thief has not only been guilty of a fraudulent concealment of the car, but of a fraudulent disposition of it within the exempting clause of the policy, and that the defendant's motion for a directed verdict should have been granted.