EARL W. HAWKINS *d. b. a.* RENT A CAR COMPANY *vs.* AGRICULTURAL INSURANCE COMPANY.

APRIL 3, 1937.

PRESENT: Moss, Capotosto, Baker, and Condon, JJ.

Moss, J. This is an action of assumpsit, brought on an insurance policy issued by the defendant to the plaintiff, to recover for the loss of an automobile covered by the policy and rented by the plaintiff to a customer and never returned. At the trial in the superior court a motion for a

nonsuit was made by the defendant at the conclusion of the evidence for the plaintiff and was granted by the trial justice on the ground that it appeared from the evidence that no claim for the loss was filed by the plaintiff with the defendant in accordance with the requirements of the policy. The case is now before us on the plaintiff's exception to this decision.

The policy was procured by the plaintiff, through a broker named Coe, from the general agent of the defendant company in the city of Providence in this state, by the name of Knibb, who maintained the defendant's office in that city and signed the policy and its riders and put the whole insurance contract into effect. By its terms, as construed by us, the defendant, besides other coverage, insured the plaintiff against direct loss of or damage to any car therein described, from theft, fraudulent concealment or disposal by any person, not in the plaintiff's service or employment, to whom the plaintiff had rented such car.

Among the provisions in the rider giving this coverage was one that the assured, upon becoming aware of any act or omission on the part of any rentee or lessee, which might be made the basis of a claim under the policy, must forthwith give notice in writing or by telegraph to the insurance company at its office in Providence and notify the police authorities, and, if required by the company, should procure a warrant for the arrest of such rentee or lessee on a charge of larceny or embezzlement. The rider also provided that within ten days after the giving of such notice the assured must file with the company a signed and sworn statement of the facts about the rentee or lessee and his conduct and the car. There was also a general condition in the policy requiring the assured, within sixty days after the loss or damage, to render to the company a signed and sworn statement of the claim of the assured, unless the time was extended in writing by the company.

The evidence showed that about 10 a. m. on June 21 the car was rented by the plaintiff to one McArdle, to be re-

turned eight hours later. It was not returned, and the plaintiff at midnight reported the facts to the police, and the next morning reported them by telephone to Coe, the broker. The latter then talked with Knibb, the defendant's general agent, and asked him to send a man to see the plaintiff and have him sign a proof of loss and to take care of the details of the matter. Knibb agreed and two days later a man from his office came to the plaintiff with some papers to be signed about the matter; and the plaintiff then signed them and gave them to the man, with the rental agreement, signed by McArdle and containing detailed information about him; and also with an insurance blank, which the plaintiff had filled out.

The next information that the plaintiff received about the car came to him on June 29 in a telegram from the police in Pecos, Texas, which is near the westernmost corner of that State, that they had the car and McArdle there. The plaintiff then telegraphed to them, in reply, to hold both the car and McArdle; and Knibb was informed of both the telegram and the reply. On July 6 McArdle sent a telegram to the plaintiff's employee who had rented the car to McArdle and was a friend of the latter's brother. In this telegram the sender stated that he was "stranded", and he asked this employee to help him get funds to return. The employee turned it over to the plaintiff, who turned it over to Knibb.

On July 14 the plaintiff received a telegram from the police in El Paso, Texas, farther west than Pecos, that they were holding the car and McArdle. They described the car and said that the Rhode Island state highway department had given the plaintiff as its legal owner. The plaintiff telegraphed back to the police to hold the car until advised differently by the insurance company or him. A few days after July 29 a letter of that date was received from the El Paso police about McArdle and the car and the prospect of selling it there for the plaintiff or the insurance company.

Knibb was informed of these various matters, either directly or through Coe, and said that it would cost too much to bring the car back. He told the plaintiff that "they", apparently meaning the insurance company, would sell it "down there" and that there was nothing more for the plaintiff to do about it. It was never brought back. After the letter came from the El Paso police, and apparently soon afterwards, the plaintiff received a letter from Coe or Knibb's office that he should go to the federal district attorney's office in Providence and swear out a warrant for McArdle's arrest. He went there with Knibb but they were told that a warrant could not be issued for McArdle's arrest in Texas.

At that time Knibb told the plaintiff that the latter had done everything that the policy called for and couldn't do anything more. Relying on that statement, the plaintiff did not file any signed and sworn statement of his claim of loss, with certain information, in compliance with the above-mentioned requirement of the policy that the insured must within sixty days file such a statement; and the time for its filing was not extended in writing by the company. But just a few days after the expiration of the sixty days the plaintiff, at the request of Coe, went to the latter's office and filled out, signed and swore to such a statement and filed it in Knibb's office, where it was received without objection and never returned. No objection was made to it, because of the lateness of its filing or for any other reason, until this case was being tried in the district court, more than seven months afterwards. Knibb told Coe at one time that the plaintiff had complied with all the provisions of the policy.

It is not contended by the defendant that it did not receive promptly all the information that was needful or useful for it in this matter, but only that it was not received in the form and within the time required by the terms of the policy and that for this reason the plaintiff was properly nonsuited in the superior court. It also contends that the

nonsuit was proper on another ground, not stated by the trial justice as a reason for the nonsuit, namely, that there was no evidence for the jury that the loss of the car was due to theft, fraudulent concealment or disposal of it by McArdle.

To take up first the former of these contentions, it is well settled that a provision, such as there was in this policy, that no officer, agent or other representative of the insurance company shall have power to waive any of the terms of the policy, unless such waiver be written upon or attached thereto, does not apply to a waiver which is given after the assured has suffered a loss within the coverage of the contract of insurance, where the waiver relates to something to be done by the assured after suffering such loss. 7 Cooley's Briefs on Insurance, (2d ed.), 5945; 14 R. C. L. 1345, 1346, "Insurance", §§ 517, 518.

It is also well settled that after a loss has been suffered under a policy, a provision therein, such as there was in this policy, to the effect that any waiver or extension of time for the giving of notice to the company of such loss, or for the filing of proof thereof with the company, must be in writing, will not prevent an oral waiver or extension of time from being valid and binding on the company, if given to the assured by any representative of the company who is authorized to give it. Cooley, on page 5943 of the volume cited *supra,* says: "Provisions in the policy as to notice and proofs of loss are inserted for the benefit of the company, and the production of such documents, or any defects therein, may be waived by the company. The principle is elementary, is never disputed, and is implied in all cases dealing with the subject." See also Richards Law of Insurance, (4th ed.) § 129; *Bishop* v. *Agricultural Ins. Co.,* 130 N. Y. 488, 495, 29 N. E. 844, and *Sergent* v. *Liverpool & London & Globe Ins. Co.,* 155 N. Y. 349, 355, 49 N. E. 935.

As above shown, there was in the instant case plenty of evidence for the jury that Knibb had given to the plaintiff a waiver of the filing of proof of loss by him with the com-

pany in strict compliance with the policy requirement pertaining thereto, the failure to comply with which is the only breach by the plaintiff that is relied on by the defendant. The only arguable question is whether there was evidence to go to the jury that Knibb had express or implied authority to give such a waiver.

There was evidence that he was the general agent of the company for the city of Providence; but it was stated by this court in *Hamblin* v. *Newark Fire Ins. Co.*, 48 R. I. 473, 139 A. 212, that the agent in that case, who had countersigned and issued the policy and was authorized to receive notice of any loss and who therefore might be found to be a general agent of the company, had no authority to promise payment or waive written proof of loss, and that the assured had no right to rely on any such promise or waiver. But it held therein that the authority of an attorney to whom an insurance company has referred a claim for adjustment is in many respects more extensive than that of a general agent and that a waiver by the company of the condition of the policy as to written proof of loss might be inferred from its reference of the adjustment to its attorney. An adjuster is generally held to have authority to waive such a condition. 7 Cooley's Briefs, 5981, 5982.

In the instant case there were facts in evidence, or reasonably inferable from the evidence, which indicated, with some clearness and force, not only that Knibb, in this matter, performed the functions of the general agent of the defendant, who countersigned the policy itself and solely signed and affixed the rider which extended the insurance to cover loss or damage caused by theft, fraudulent concealment or disposal by a rentee, and with whom proofs of loss were to be filed by the insured; but also that in this matter he performed the functions of *adjuster* for the defendant and with its knowledge and assent.

According to the evidence, as set forth above, he, through an employee in his office, as soon as he was notified of the loss of the car, coöperated with the plaintiff in the prepara-

tion and execution of the first claim of loss; he also kept in close touch with the plaintiff in the whole matter, received all pertinent information that came to the plaintiff from time to time, and decided whether the car should be brought back to Providence or sold in Texas to reduce the plaintiff's damages. The evidence indicated that in general he represented the defendant in the investigation and ascertainment of the facts, in the treatment of the car and McArdle and in the matter of the proof and the adjustment of the claim. It also indicated that he advised the plaintiff as to what the latter should do in order to comply with the requirements of the policy.

That he did all these things with the knowledge and consent of the defendant is indicated by the proven fact that the long letter of July 29 from the police authorities of El Paso to the plaintiff, which was delivered by the latter to Knibb, was presented at the trial with the information stamped on it at the home office of the defendant that it was received there on August 5, about four days after it was received by the plaintiff.

All this was in our judgment evidence for the jury that Knibb had authority to bind the company by waiving, as according to the evidence he did waive, after the loss had occurred, the strict requirement of the policy as to the presentation of proofs of loss. This conclusion is supported by excellent authority. Thus, the rule for such cases is stated as follows at page 5955 of Cooley's work above cited: "It is a well-settled rule that any officer or agent of an insurance company, who has power to accept proofs of loss, and to deal with the insured in the settlement of the claim, will have power to waive the notice or proofs, or any defect therein, . . . and, in the absence of a known limitation upon the power of such an agent, the insured may safely rely upon his words and conduct."

In Searle v. Dwelling House Ins. Co. 152 Mass. 263, 25 N. E. 290, it was held that if the jury were warranted by the evidence in finding that a certain man was the company's

agent in the matter of the technical proof of loss required by the terms of the policy, they could find that he could, as such agent, extend the time within which such proof should be made formally to the company, "especially after he had received from the insured a full and complete statement of the items going to make up the amount, although informally made." The court also said: "That the defendant can in any way have been harmed by the failure to file formal proofs of loss cannot be contended. It was in possession of all the details of the loss by the report of Norris upon the informal paper, and, upon the whole evidence, the jury was justified in finding that it had waived a strict compliance with the condition requiring a formal proof of loss to be made forthwith."

In *McCullough* v. *Home Ins. Co.*, 155 Cal. 659, 663, 102 P. 814, 815, there was evidence that within the sixty days allowed by the policy for the filing of a sworn proof of loss, an adjuster for the company told the insured that though the proof ought to be sworn to, it was not necessary and he would go ahead and settle just the same, and that the insured therefore did not swear to the proof of loss. It was held that this was evidence on which the jury might properly find that the company had waived the requirement of the policy that the proof must be sworn to by the insured.

For the reasons above stated we are of the opinion that the trial justice in the instant case was not justified in non-suiting the plaintiff on the ground that the plaintiff did not, within sixty days after the loss, file at Knibb's office signed and sworn proofs of loss in accordance with the requirements of the policy.

This leaves for consideration the contention of the defendant that the nonsuit was proper because there was no evidence for the jury that the loss to the plaintiff was due to theft, fraudulent concealment or disposal of the car by McArdle. On this point we are of the opinion that

there *was* evidence, which should have been left to the jury, that he did commit a theft of the car.

As the policy was issued in this state, it must be construed according to the law of this state. In *Brady* v. *Norwich Union Fire Ins. Society,* 47 R. I. 416, 133 A. 799, it was held that under a similar policy the word "theft" included not only common law larceny but also each of the crimes which were formerly the separate crimes of embezzlement and obtaining property by false pretenses.

In a note in 89 A. L. R. at page 466 the following statement is made: "In order to constitute a 'theft' within the meaning of a policy insuring against the theft of an automobile, it is generally held that there must be present a criminal intent permanently to deprive the owner of his property." We are of the opinion that the converse also is true and that in this state it is a theft of an automobile, under the terms of such a policy as the one in the instant case, for a man to get possession of it from its owner, under a rental agreement that he may use it for a few hours only, and then to drive it off with the criminal intent of depriving the owner of it permanently.

In *Home Ins. Co.* v. *Paul,* 128 Okla. 142, 261 P. 927, *Simpson* v. *Palmetto Fire Ins. Co.,* 145 S. C. 405, 143 S. E. 184, and *Simpson* v. *General Exchange Ins. Corp.,* 155 S. C. 400, 152 S. E. 672, it is held that a theft under such a policy is shown by evidence that a man obtained possession of a car under a similar rental agreement and drove it away and then either he disappeared, and neither he nor the car was afterwards seen or heard of, or else he took it to a far-distant place and kept it until he was arrested.

In *State* v. *South,* 28 N. J. L. 28, a larceny case, the court, at page 30, quotes with approval from the opinion in an English case, and applies, the following language as to the criminal intent necessary in larceny: "If it appear that the prisoner kept the goods as his own till his apprehension, . . . such intent may, generally speaking, be deemed proved. . . . If, on the other hand, the prison-

er took the goods with a view only to a *temporary user,* intending to keep them for a short time only, and to return them to the owner unimpaired, an intent thereby wholly to deprive the owner cannot, generally speaking, be deemed proved. . . . But if he took them with a view only to a temporary user, intending, however, to keep them for a very unreasonable time, or to use them in a reckless, wanton, or injurious manner, and then to leave it to mere chance whether the owner ever recovered them or no, and if he recovered them at all, would probably recover them in a damaged or altered condition, such a taking would seem, in common sense, to be ample evidence of an intent wholly to deprive the owner of his property."

In *Bird* v. *St. Paul Fire & Marine Ins. Co.,* 218 Mich. 266, 187 N. W. 265, the court, on this point of sufficient evidence for a jury as to the intent to steal, quotes the above-quoted language from the opinion in the New Jersey case above cited, and also quotes, from the same opinion, and applies this further language: "The fact of the taking being merely for temporary use seems, therefore, not of itself to be inconsistent with an intent wholly to deprive the owner of his property, and therefore does not seem necessarily to negative the felony, but simply to be a piece of evidence which the jury may regard as showing a taking from wantonness, mistake, accident, frolic, or thievish design, according to circumstances."

*Federal Ins. Co.* v. *Hiter,* 164 Ky. 743, 176 S. W. 210, is a case very similar to the instant case in its facts and it is held in that case that there was sufficient evidence of a theft of a car, where it was shown that it was lent by its owner to a man to be driven to a certain place, where he said he hoped to get employment; that he not only went beyond that place, but never did in fact return the machine, and abandoned it in a remote section of a distant state in a badly damaged condition; that he did not even notify appellee where it might be found; and that it was

not in fact recovered for some six or seven weeks after it should have been returned.

The evidence in the instant case corresponds very closely with the evidence in that case. Besides the proven facts to which we have already called attention, others bearing directly on this point were shown or indicated by the evidence. McArdle, when apprehended by the police in the westernmost corner of Texas, was on a direct southern route to California and in the letter which was sent by the police department of El Paso to the plaintiff and which the plaintiff read to the jury at the request of the defendant's attorney, the sergeant, in charge of the auto theft bureau there, said that the last time he had talked with McArdle the latter spoke of going to California. The two facts indicate that he was probably on his way to that state when the police stopped him and his funds ran out.

The sergeant also stated in that letter that the car had been abused and that McArdle had borrowed some money on it. The same police official, in his telegram of July 13 to the plaintiff, stated that he had learned of the latter's ownership of the car by communicating with the Rhode Island highway department, which indicated that even after McArdle was apprehended he concealed the fact that the car belonged to the plaintiff.

The evidence indicated clearly that he made no attempt to communicate with the plaintiff, and the jury might reasonably have inferred from the evidence that if McArdle had not been stopped by the police and an investigation made, the plaintiff never would have heard of the car again. It was in evidence also that when the car was not returned within a reasonable time after it was taken out, the plaintiff investigated McArdle's record in Providence and found out that he was wanted by the police there, indicating a motive for his conduct.

In our opinion the evidence should have been submitted to the jury on the question whether McArdle had obtained possession of the car with the criminal intent of perma-

nently depriving the plaintiff of it and therefore, by his theft of it, had inflicted on the plaintiff a loss within the coverage of the policy. We therefore find that the nonsuit cannot be supported on the ground that there was no evidence to go to the jury on this question.

The plaintiff's exception is sustained and the case is remitted to the superior court for a new trial.

*Sayles Gorham,* for plaintiff.

*McGovern & Slattery, Fred B. Perkins, William E. Mc-Cabe,* for defendant.