DECISION
The plaintiff, Foremost Insurance Company (Foremost), petitions this Court for declaratory relief pursuant to G.L. 1956 § 9-3-1, et seq. Foremost asks the Court to construe the terms of a "Motor Home Policy" it issued to the insured, defendant Anthony A. Pitocco (Pitocco). Specifically, the Court is to determine whether Pitocco is entitled to recover for the loss of his motor home. This loss allegedly stems from the "theft or larceny" of the vehicle.
 Facts/Travel
In August 1991, Pitocco purchased a 1987 model year "Travelcraft" motor home from a dealer in Cranston, Rhode Island. Pitocco insured this motor home through Foremost. Pitocco maintained this coverage for three separate policy periods: November 1, 1992 to November 1, 1993; November 1, 1993 to February 1, 1994; and February 6, 1995 to February 6, 1996. All three policies provided for coverage in the event of an "Other Than Collision" loss. Theft or larceny is enumerated in the policy as an other than collision loss. Under this provision Foremost is obligated to provide a maximum of $75,000 of coverage in the event of a theft occurrence.
George Peloso (Peloso) is a lifelong friend of Pitocco. Throughout these years of friendship, each has borrowed for his own use the valuable equipment, machinery and vehicles of the other. In late 1992, Peloso asked Pitocco's permission to borrow the motor home, which was garaged in Rhode Island, for the purpose of a business and pleasure trip to Texas and California. Pitocco granted this permission, and Peloso's departure followed in January 1993.
Peloso testified that he first traveled in the vehicle to Houston, Texas. From Texas, he proceeded to California.[1] Upon arriving in California, Peloso learned of a potential job in Guatemala. He decided to pursue this opportunity and thus traveled in the motor home from the United States, through Mexico, and into Guatemala.
Peloso testified that in Guatemala the vehicle suffered a broken rear axle. While driveable, the vehicle was not suited to lengthy travel such as the return trip to Rhode Island. Efforts by Peloso to secure replacement parts while he was in Guatemala proved fruitless. Ultimately, Peloso returned to Rhode Island in the early spring of 1993, but without the motor home, which was left in storage. Subsequently, the motor home was stolen from the storage lot. This event prompted Peloso's return to Guatemala, where he was ultimately able to recover the vehicle and return it to the lot. Peloso testified that the cost of this recovery and the storage fees owed total $15,000. Further, Peloso testified that he intended and still intends to return the vehicle to Pitocco, although his present financial straits and poor health currently prevent this.
Pitocco testified that Peloso's inability to produce the motor home prompted his notifying the State Police of the loss in July 1994. Upon initial inquiry, the State Police deemed the matter a civil one and thus did not pursue criminal action against Peloso. In July 1995, Pitocco filed a claim with Foremost in which he alleged a theft loss. A July 18, 1995 letter issued by Foremost stated the claim to be under investigation. The letter also noted that the vehicle was located in Guatemala although at a site unknown.
On May 15, 1996, Foremost denied Peloso's claim, asserting that a theft had not been established. In support of its denial Foremost noted that the vehicle was taken with Pitocco's permission and that the vehicles present location was known. Foremost also stated that the vehicle, at its location in Guatemala, was outside the policy territory and thus ineligible for any damage coverage. The instant declaratory judgment action followed.
 Theft
The parties dispute the meaning to be assigned the word "theft" provided in the motor home insurance policy. The term is not defined in the policy. The parties further dispute whether the conduct of Peloso, in taking the vehicle to Guatamala, constitutes a theft. Specifically, Pitocco alleges that this act exceeded the permissible use extended by him and is thus a theft. Foremost argues that Pitocco granted to Peloso the unrestricted and unqualified use of the motor home. Such a grant, Foremost proffers, is inconsistent with an allegation of theft. The Court did not find Pitocco to be a credible witness. Peloso was the more compelling.
Because the term "theft" is undefined in the policy it will be assigned its common and ordinary meaning. Amica Mut. Ins. Co.v. Streicker, 583 A.2d 550, 552 (R.I. 1990). Such an interpretation protects the insured, who is party to a contract drafted by the insurer. 2 Lee R. Russ Thomas F. Segalla, Couchon Insurance 3rd § 22.14 (1995 Ed.). "Theft" is defined as "the act or instance of stealing; larceny." WEBSTER'S NEW UNIVERSAL UNABRIDGED DICTIONARY 1891 (2d ed. 1983). To steal means "to take or appropriate (another's property, ideas, etc.) without permission, dishonestly, or unlawfully, especially in a secret or surreptitious manner." Id. at 1179 (2d ed. 1983). Applying this plain meaning in a review of the policy, particularly the disputed "other than collision" provision, this Court determines the policy to be clear and unambiguous. SeeCampbell v. Norfolk Dedham Mut. Fire Ins. Co., 682 A.2d 933, 935 (R.I. 1996). A theft or larceny, generally understood by the ordinary reader as defined above, is covered under the policy.Id.
Rhode Island has had the opportunity, though some years ago, to review the term "theft" within the general factual framework found in the present matter, i.e., an alleged theft of a vehicle and a subsequent claim made on an insurance policy. Mello v.Hamilton Fire Ins. Co. 71 R.I. 510, 47 A.2d 621 (1946) (all automobile takings, without the owners consent, which result in the destruction of that auto, do not equate to theft as a matter of law); Hawkins v. Agricultural Ins. Co., 58 R.I. 40, 190 A. 858
(1937) (the criminal intent of permanently depriving the owner of the property is an element of theft); Brady v. Norwich Union FireIns. Soc'y, Ltd., 47 R.I. 416, 133 A. 799 (1926) ("larceny" is viewed as a synonym of "theft"). Even though the term is viewed "broadly," the insured "must prove a taking without consent, and an intention, though not necessarily at the time of the taking, to deprive the owner permanently of his property. . . ." Mello,
47 A.2d at 622. Theft is not equivalent to "a mere taking without consent." Id.
As to the first prong of the above-stated standard, it is clear that Peloso took the vehicle with the consent and approval of Pitocco. The evidence before this Court establishes that neither time nor geography limits were placed on Peloso's use of the motor home. A theft, therefore, did not occur at this stage of Pelosos travels.
With respect to the second prong of the standard in support of his claim of theft, Pitocco argues that Peloso exceeded the bounds of restrictions placed by Pitocco on the use of the vehicle by travelling to Guatemala. This Court notes, however, that no restrictions were placed on the use of the vehicle. Therefore no boundary was crossed by Peloso so as to transcend permitted use and enter the realm of theft. Even assuming that bounds were in place, which Peloso then crossed, a theft, as construed in Mello, did not occur as a mere taking without consent is insufficient for theft. Id. Pitocco has not established the requisite intent on the part of Peloso to permanently deprive him of the motor home, and thus has not established theft under the policy. Appeal from Id.
Further, Pitocco's claim that Peloso's abandonment of the vehicle as a result of wanton and reckless use equates to theft, while of some merit initially, also fails. This standard, cited in Hawkins, and relied on by Pitocco, is taken from a New Jersey criminal (larceny) case, which, in turn, cites an English case.Hawkins 190 A. at 862 (citation omitted). There is no evidence before the Court that Peloso acted in a reckless or wanton manner. When the vehicle suffered damage from a broken axle on the road, Peloso "rigged" the vehicle so as to make it driveable. He then pursued a wide search to replace the broken part. When the part proved unavailable, he returned to Rhode Island with the intention of attaining the necessary parts and returning to the vehicle. Upon learning of the theft of the vehicle from storage in Guatemala, he returned to that country to aid in its recovery, going so far as to hire a private investigation team and a helicopter to search the countryside. The vehicle was recovered and returned to safe storage. Plans to return the vehicle to Rhode Island continue to the present day. However, the financial hard times and health problems suffered by Peloso resulted in a lengthy delay of the ultimate goal, the return of the vehicle. During this period of time, Pitocco has been deprived of use of the vehicle. Such deprivation does not amount to a theft, however.
 The Policy Territory
Foremost argues that if a loss did occur, it fell outside the policy territory and is thus not covered. Pitocco disagrees, asserting that Peloso formulated his intent to steal the motor home in California. The theft, Pitocco maintains, thus occurred within the policy territory.
General Provisions Part F of the insurance policy, entitled "Policy Period and Territory," defines the policy territory as the United States, its territories and possessions, Puerto Rico and Canada. The policy states that coverage applies only to accidents and losses occurring within this policy territory. The territorial limitation imposed on the policy is a valid provision. Pollard v. Hartford Ins. Co., 583 A.2d 79, 81 (R.I. 1990) ("a reasonable purchaser of an automobile liability policy would not anticipate coverage for losses occurring in non-covered territories.")[2] Even if a loss had occurred in this matter, the "situs" of that loss would have been Guatemala. Guatemala is outside the valid policy territory, and thus losses occurring there would not be covered by the policy.
Having reviewed the insurance policy, this Court declares that the term "theft" is to be given its plain and ordinary meaning.Amica, 583 A.2d at 552. Such a result serves to protect the insured and is in accord with general rules of insurance law. On the evidence before it, this Court finds that a theft loss of the motor home vehicle pursuant to the policy has not occurred. Accordingly, Pitocco is not entitled to recovery under the policy.
Counsel shall submit the appropriate judgment for entry.
[1] The Court heard this declaratory judgment petition on September 30, 1998.
[2] The policy limitation found in Pollard is the exact limitation at issue in the present matter.