15357

SATCHER v. WOODMEN OF THE WORLD LIFE INS. SOC.

(18 S. E. (2d), 523)

October, 1940.

*Messrs. Williams & Busbee*, of Aiken, for appellant,

*Mr. T. B. Greneker*, of Edgefield, for respondent,

Counsel for appellant, in reply brief,

January 26, 1942.

The opinion of the Court was delivered by MR. ACTING ASSOCIATE JUSTICE G. DUNCAN BELLINGER.

The respondent instituted this action in the Court below, alleging that he had become totally and permanently disabled, and that by reason of the provisions in his benefit certificate or policy of life insurance, issued to him by the Sovereign Camp of the Woodmen of the World, he was entitled to certain benefits which the appellant had refused to pay.

The respondent alleged that on September 21, 1938, he became totally and permanently disabled to the extent that he

could no longer do the customary tasks and work which he had been trained and equipped to do, and would be wholly prevented from performing any work for compensation or profit, or engaging in a gainful occupation. The respondent is under the age of sixty years, and was, at the time he became insured with the appellant, a member of Camp No. 195, Johnston, S. C., of Woodmen of the World. The appellant, Woodmen of the World Life Insurance Society, is the successor to the Sovereign Camp of Woodmen of the World, which was organized in the year 1890: On September 1, 1937, the original corporate name of the society was changed from Sovereign Camp of Woodmen of the World to Woodmen of the World Life Insurance Society. The rights, benefits, and privileges of the members of the society, and their benefit certificates, or insurance policies, issued by Sovereign Camp of Woodmen of the World, were in nowise affected by the change in the name of the society.

It is not necessary to set forth in this opinion the form of the certificate or policy of insurance, or the constitutions, laws and by-laws of the society, for the reason that all of these instruments are set forth in detail and their provisions fully construed in the very recent case of *Palmer v. Sovereign Camp of Woodmen of the World,* 197 S. C., 379, 15 S. E. (2d), 655.

The appellant, by its answer, interposed a general denial, and by way of further defense alleged that at the time respondent was injured, on September 21, 1938, he had been suspended from appellant's society for failure to pay his assessments for the month of August, 1938, and was not in good standing when he undertook to reinstate his certificate on the 27th day of September, 1938; that by virtue of this delinquency the beneficiary certificate, under the constitution, laws and by-laws of the society, became void, and his contract with the society completely terminated and ended. The appellant had made the respondent a loan on the certificate in controversy on December 6, 1938, in the sum of $89.04, being the amount of the loan applied for after deducting in-

terest, and in its answer the appellant counterclaimed for this sum. At the conclusion of all of the testimony the appellant moved for a directed verdict in its favor upon the same grounds embodied in the exceptions, as follows:

"The trial judge erred in refusing to direct a verdict for the defendant upon the grounds set out in defendant's motion for a directed verdict, namely, that the only reasonable inferences to be drawn from the testimony are:

" '(a) That the plaintiff failed to pay his installment of Seven and 78/100 ($7.78) Dollars for the month of August, 1938, on or before the last day of the month, and thereby became suspended, his beneficiary certificate void, and his contract with defendant thereby completely terminated and ended, prior to his alleged injury and disability.'

"The error being that the trial judge should have found and held from the testimony that there was no other reasonable inference than that plaintiff failed to pay his installment of $7.78 for the month of August, 1938, on or before the last day of the month, and thereby became suspended, his beneficiary certificate void, and his contract with defendant thereby completely terminated and ended, prior to his alleged disability, and a verdict should have been directed for defendant.

" '(b) That the plaintiff was not in good health when he attempted to reinstate his policy by paying the installment premium for the month of August, 1938, on the 27th day of September, 1938, and did not remain in good health for a period of thirty days thereafter.'

"The error being that the trial judge should have held that the only reasonable inference to be drawn from the testimony was that plaintiff was not in good health when he attempted to reinstate his policy by paying his installment premium for the month of August, 1938, on the 27th day of September, 1938, and did not remain in good health for a period of thirty days thereafter, and in failing to direct a verdict for the defendant upon this ground."

The motion for a directed verdict was refused and the entire case submitted to the jury. The jury returned a verdict for the respondent, awarding the amount claimed by him, less the sum of the counterclaim interposed by the appellant.

The appellant submits that its exceptions raise but one question for the determination of this Court, that being: Did the trial Judge err in refusing to direct a verdict for the appellant?

For the proper disposition of the question presented, it becomes necessary to review in somewhat chronological order the pertinent facts as shown by the testimony. None of the testimony developing the facts referred to herein was objected to by the appellant upon its introduction, nor was any motion made at any time to strike out that testimony.

October 31, 1935, the beneficiary certificate, or policy of insurance, was issued to respondent. The assessments, or premiums, on this certificate were required to be paid on or before the last day of each month. There was introduced in evidence a number of receipts issued to the respondent by the appellant for monthly assessments on the certificate. These receipts issued began with the assessment of March, 1936, and ended with the one issued for March, 1939. All of the receipts issued by the appellant to the respondent for the monthly assessments were not introduced in evidence, a number of these receipts being missing. The receipts introduced in evidence show that none of the payments evidenced thereby were made before the last day of the month they became due, but they represented assessments overdue from two to thirty days. The respondent testified without objection or contradiction that he had from the time he received his certificate, and until April 21, 1939, when he received notice from the society that his certificate had been permanently lapsed, paid his assessments the month following the period that they were due, and that no objection had been raised by the society or its representative to the irregularity of these payments.

September 12, 1938, W. J. Hatcher, the financial secretary of the local camp, of which the respondent was a member, filed his report with the home office of the society, showing respondent to be delinquent in his assessments by placing after respondent's name on the report in red ink the letter "D".

September 21, 1938, the respondent received severe injuries to his foot and leg while operating farm machinery and was confined for several weeks in a hospital as the result of the injuries, and was there visited by W. J. Hatcher, financial secretary of the local camp. The testimony clearly shows that as a result of these injuries the respondent became totally and permanently disabled.

Upon respondent's return to his home from the hospital, W. J. Hatcher, the financial secretary of the local camp, visited him often and could easily observe his physical condition.

September 27, 1938, the financial secretary of the local camp issued to respondent a receipt for his assessment due for the month of August, 1938.

December 2, 1938, the respondent applied to appellant for a loan on his benefit certificate or policy of insurance. It was necessary to execute certain papers in connection with the loan, and to have them properly witnessed. Hatcher, the financial secretary of the local camp, went to the home of respondent where he was confined to bed as the result of his injuries, and aided respondent in the execution of the papers necessary to the securing of the loan. The society required that a notary public or authorized agent witness the execution of the papers. Hatcher witnessed the loan application, and signed his name thereto, not as a notary public, and it must therefore be assumed that he signed as the authorized agent of the society. The society required that the receipt from the local camp financial secretary for the last assessment paid by respondent accompany the application for the loan.

December 6, 1938, the society issued its warrant payable to respondent in the sum of $89.04, being the amount of the loan applied for after deducting interest thereon. This warrant was endorsed on the back by the respondent and by W. J. Hatcher.

February 25, 1939, the society sent to respondent its warrant in the sum of $6.82, which, from the letter accompanying it, represented a refund or dividend that the society had earned from the operation of its business, to which dividends only the members of the society were entitled. In the transmittal letter the society sought to have the respondent increase his insurance.

March 6, 1939, the respondent wrote the home office of the appellant, informing the appellant that he had been severely injured on September 21, 1938. He explained in detail his injuries, and sought the payment of disability benefits under his certificate or policy of insurance. March 16, 1939, the appellant acknowledged receipt of respondent's letter advising of his injuries, and informed respondent as to what benefit his certificate provided for. In the same communication appellant requested respondent to send to it a certificate of the attending physician as to the extent of his injuries, and advised him that appellant would consider the matter of supplying the necessary application forms for disability benefit upon receipt of the doctor's certificate. March 22, 1939, the attending physician furnished the certificate requested, in which was described respondent's injuries, and the physician certified that in his opinion the respondent "will be permanently disabled and unable to engage in any gainful employment." This certificate was introduced in evidence in the trial of the case along with other testimony touching upon the disability of the respondent. April 21, 1939, the appellant wrote the respondent that it had information that he had been suspended from the society and was not in good health on September 27, 1938, when the payment of the delinquent installment of dues for August, 1938, "was

tendered by or for you to the financial secretary of the local Camp No. 195—SC." The appellant enclosed therewith its warrant for the amount representing dues or assessments paid for the period from August, 1938, to and including March, 1939, and further informed respondent that Mr. Hatcher, the financial secretary of the local camp, had been instructed to refund respondent's local camp dues for these months. In that communication the appellant notified respondent that his certificate had been permanently lapsed.

In passing upon the motion for a directed verdict, we must construe the testimony in the most favorable light to the respondent.

The synopsis heretofore given of the evidence shows without contradiction that from the time respondent became a member of the appellant's society in 1935, up and until April 21, 1939, he was considered and dealt with by the society as one being in good standing. In its dealings with the respondent during that period of time appellant recognized respondent's beneficiary certificate to be in full force and effect. This is evidenced by the annual dividend paid him, and by granting to him a loan on his policy or benefit certificate, on December 6, 1938, none of which he would have been entitled to unless he was a member in good standing, and not delinquent in the payment of his assessments. This was done after the home office had been notified by the financial secretary of the local camp that as of September 12, 1938, the respondent was delinquent in the payment of his assessment.

At the time these things were done the financial secretary of the local camp knew of respondent's physical condition, and had known of this condition for several months. During this period of time the respondent continued to pay his assessments to the financial secretary of the local camp, and that secretary, knowing all the while of the injuries to the respondent, remitted these assessments to appellant's home office.

The evidence shows that the financial secretary of the local camp was not only the agent to collect and remit the dues of

the members of the local camp to the home office of the society, but he had other duties to perform. In the instant case, at the request of the home office, he assisted the respondent in the execution of the papers necessary to securing a loan, all of which was done under the instruction of appellant's home office. The financial secretary of the local camp, as the authorized representative of the appellant, witnessed the execution of the loan application as required by the appellant.

The financial secretary of the local camp knew that the respondent had, from the time he became a member of the society, been delinquent in the payment of his assessments, and it is but fair to assume that the records of the home office of the appellant showed these facts. The financial secretary was in full possession of all of the facts concerning the standing of the respondent as a member of the society.

The financial secretary of the local camp was the agent of the society, and while acting within the actual scope of his authority he bound the society, and notice to him under such circumstances was notice to the society. The general rule applicable to waiver and estoppel is applicable to the facts in this case, and while it does not apply to the agent, it does apply to the principal, the appellant society, which was bound by the knowledge of the agent as to the physical condition of the respondent, as well as to the delinquencies in the respondent's assessments.

The appellant in its dealings with the respondent has led the respondent to believe that he was in good standing with the society as a member thereof, entitled to all of its benefits as such member, and as a holder of a benefit certificate or policy of insurance. He was led to feel secure in the belief that if anything should befall him his benefit certificate would be paid to him. He was not aware of the fact that he would not receive the benefits of his certificate or policy until April 21, 1939, when he was notified by the society for the first time that he had become suspended several months before that date.

Courts abhor forfeiture, and will search carefully to see whether or not the evidence shows or tends to show a waiver on the part of the one seeking to enforce a forfeiture. Where one dealing with another has by its course of dealing, through leniency or otherwise, lulled that person into a sense of security, then the one doing those things cannot, when a loss occurs, in order to escape its liability, fall back upon the strict terms of a contract, the terms of which the one liable on the contract has led the other party to believe would not be strictly enforced. There was ample evidence of waiver of the strict terms of the contract of insurance regarding the payment of the assessments, and the health of the respondent. The appellant will not now be heard to say after its course of dealings with the respondent, that it, the appellant, is not liable under the contract made with the respondent.

The facts in this case are more strongly in favor of the respondent herein than were those in *Palmer v. Sovereign Camp of Woodmen of the World, supra.* The principles of law applicable to the issues raised herein were decided adversely to the contention of this appellant in the case just referred to, which case is replete with authorities on the subject. It would therefore serve no useful purpose to engage in a lengthy discussion of the legal principles involved in this appeal.

The appellant argues that the ruling of the trial Judge on the question of the competency of certain evidence not having been appealed from by the respondent, became the "law of the case," and that as a result of that ruling the knowledge of the financial secretary of the local camp of respondent's physical condition was not notice to the appellant, and could not be construed as evidence of waiver of the forfeiture of respondent's rights and benefits under his certificate, or insurance policy. While we are of the opinion that neither the grounds upon which appellant based its motion for a directed verdict, nor the exceptions as framed properly raise the question as to whether the ruling of the

trial Judge became the law of the case, we shall dispose of the question which was raised in appellant's argument.

The respondent, while testifying, was asked by his counsel if the financial secretary of the local camp had discussed the matter of his policy with him. Upon objection made by the appellant the Court ruled, "As I understand there are only two things that would be binding, and one is to collect the money, and the other to remit. Our Courts have held that what was said will not be competent, therefore I do not think it would be competent." Again, when the same witness was asked a similar question, the trial Judge said, "I ruled that any testimony tending to show what this man (the financial secretary of the local camp) said is not binding." We are not here concerned with the correctness of this ruling.

The evidence set forth in this opinion was admitted without objection by the appellant, and much of it was introduced for the purpose of showing the knowledge of the financial secretary of the local camp concerning the respondent's physical condition. The ruling of the trial Judge upon the admissibility of the testimony objected to in nowise fixed the law of the case.

The evidence of waiver and estoppel being before the jury without objection, the question of whether or not the appellant had waived the strict compliance by the respondent of the terms and conditions of his benefit certificate, or policy of insurance, was submitted to the jury by the trial Judge, and the jury was charged the law of waiver.

It follows from what we have said, that the trial Court committed no error in refusing to direct a verdict for the appellant.

Judgment affirmed.

Mr. Chief Justice Bonham and Messrs. Associate Justices Baker, Fishburne and Stukes concur.