15699

## MOORE v. PILOT LIFE INSURANCE COMPANY
(32 S. E. (2d), 757)

476

*Messrs. Thomas, Cain & Black,* of Columbia, S. C., Counsel for Appellant,

*Mr. James E. Leppard,* of Chesterfield, S. C., Counsel for Respondent,

Counsel for Appellant,

January 5, 1945.

MR. ASSOCIATE JUSTICE OXNER delivered the unanimous Opinion of the Court:

On March 18, 1924, appellant, Pilot Life Insurance Company, issued a policy of insurance for $1,000.00 on the life of John Gary Moore and designated respondent, Mary Rivers Moore, as the beneficiary. The insured died on February 4, 1932. This action was brought by the beneficiary to recover the face amount of the policy less a loan against it and resulted in a verdict in her favor by the jury. From the judgment entered thereon, appellant has appealed, assigning errors in the refusal of the trial Judge to grant its motions for a nonsuit and directed verdict and in the charge to the jury.

The premium on the policy was payable annually on October 18th. It is undisputed that the insured never paid the annual premium due October 18, 1931, although all prior premiums were paid. The policy has attached to it a total

and permanent disability provision wherein, in consideration of an additional annual premium, the insurer agreed, in the event that the insured became totally and permanently disabled, to waive, subject to the conditions hereinafter set out, the payment of premiums thereafter becoming due on the policy. Respondent contends that the insured became totally and permanently disabled on or about August 1, 1931, and so remained until his death in February, 1932; that on or about September 1, 1931, the insured applied through the appellant's agent at Chesterfield, G. W. Eddins, for waiver of the payment of further premiums and for the payment of monthly total and permanent disability benefits provided for in the endorsement; that the agent at that time promised and agreed to furnish insured with proper blanks and forms with which to make written application and to assist in preparing and filing same, but failed and neglected to do so; that on or about November 1, 1931, upon further inquiry by insured, the agent declined to furnish said blanks or forms, stating that the policy had lapsed; and that by reason of these circumstances, the appellant waived notice and proof of disability as required by the endorsement and is estopped to claim that the insured failed to comply with these requirements. Appellant denies that insured became totally and permanently disabled, asserts that the policy lapsed for non-payment of the premiums due October 18, 1931, and contends that even if the insurer became totally and permanently disabled, he failed to give notice to appellant and file proof of loss as required by the disability endorsement. In reply to respondent's contention as to waiver and estoppel, appellant says that Eddins was only a soliciting agent and had no authority to waive any of the policy requirements.

All of these questions were submitted by the trial Judge to the jury and by the verdict answered adversely to appellant's contentions. Under the excep-

tions we are called upon to determine whether there was sufficient testimony to warrant the submission of the case to the jury on the following issues: (1) Whether insured was totally and permanently disabled at the time appellant claims the policy lapsed for non-payment of premiums; (2) whether Eddins had actual or apparent authority to waive the policy requirements as to giving notice and filing proof of insured's alleged total and permanent disability; and (3) if he had such authority, whether the appellant through him waived such policy requirements or is estopped to assert them. In considering these questions, the evidence must be viewed in the light most favorable to respondent. We shall discuss them in the order stated.

The testimony offered by respondent on the issue of total and permanent disability may be briefly summarized as follows: The insured and his wife, the respondent, were people of very limited education and operated a two-horse farm in Chesterfield County, where the insured did the usual manual labor connected with such farming operations. Several years prior to insured's death, it became necessary to amputate the middle finger of his right hand. He also had blood poisoning in the palm of his right hand and arm, resulting in the loss of the use of this hand. After this trouble, insured continued to operate the farm, but could not use his right hand to do anything. During the whole of 1931 he was in bad health. About the middle of the summer he was not at work, although not confined to bed. At this time he had pellagra, kidney trouble and complained of his back, head and stomach. His condition seemed to get progressively worse. In October, 1931, he was confined to his home and during a part of the time was in bed. He remained entirely in bed during the last three months of his life. While in bed he contracted typhoid fever and died on February 4, 1932.

In support of its contention that this issue should not have been submitted to the jury, appellant relies largely on certain written statements made to it in connection with another policy which insured had with the appellant. Insured appied for reinstatement of that policy in March, 1931, stating that he was in sound health and had not been unable to attend to his regular business in any way since his last examination for insurance with appellant. It will be observed that this statement was made prior to the period when respondent claims insured became totally disabled. It further appears that in filing proof of death under that policy, the respondent stated that the deceased last attended to his usual work on December 20, 1932 (evidently meaning 1931), and that the only physicians who attended the deceased during the three years prior to his death were Drs. Perry and Teal, who treated him for typhoid fever in January, 1932. There was also attached to this proof of death a certificate signed by Dr. Perry, stating that the cause of death was typhoid fever from which the deceased had suffered for approximately four weeks, that the deceased was prevented from attending to his business for about three weeks, and that he knew of no other disease from which deceased had suffered. Dr. Perry, as a witness for appellant, testified that he treated the insured for pellagra but he was not asked about the date when this occurred, and that his recollection was that the insured was feeling badly in 1931. He further testified that his inserting typhoid fever as the cause of death in the above certificate did not necessarily mean that the insured did not have other diseases, as he used all the space he had on the blank and he thought the appellant was only interested in his giving a sufficient cause of death. It is undisputed that during the last years of his life assured was attended by four or five other physicians who died prior to the trial of the case.

While the written statements referred to contradict in many particulars the testimony offered by the plaintiff, we think that it was the province of the jury to pass upon this conflict of testimony. All of these statements were made in connection with another policy and were not of such character as to have misled the insurer in connection with the one in question. Even if made in connection with the policy sued on, it was held in *Wade v. Metropolitan Life Insurance Co.,* 179 S. C., 70, 183 S. E., 589, 591, that statements made in such proofs of loss "are not conclusive upon the claimant, at least where no estoppel is involved, and where there is no intent or attempt to defraud the insurer. The statements may be explained, qualified, or corrected, and it may be shown that they were the result of inadvertence, mistake, or misinformation."

We think there was abundant evidence to go to the jury on the question of whether the insured was totally and permanently disabled within the meaning of that phrase as uniformly construed by this Court. Of the numerous cases, we shall only refer to the following which involved the issue of total disability where the insured was a farmer: *Taylor v. Southern States Life Insurance Co.,* 106 S. C., 356, 91 S. E., 326, L. R. A., 1917-C., 910; *Berry v. United Life & Accident Insurance Co.,* 120 S. C., 328, 113 S. E., 141; *Black v. Jefferson Standard Life Insurance Co.,* 171 S. C., 123, 171 S. E., 617. But appellant contends that there is no evidence that the insured suffered from any disease which would render his disability permanent. In *Odiorne v. Prudential Insurance Co.,* 176 S. C.; 69, 179 S. E., 669, 670, the Court held that in order to warrant recovery for permanent disability, "it is sufficient for the insured to show that there is a reasonably substantial possibility that a condition of existing total disability will remain changeless." There is no necessity in this case to speculate or indulge in any presumption as to the dura-

tion of insured's disability, for there is abundant evidence that his physical condition did not change, but grew progressively worse, and continued until he died. This contention is clearly untenable.

The remaining two questions will be considered together. The portion of the total and permanent disability endorsement material to this controversy is as follows: "If, after the date hereof, while this Policy is in full force and effect, and before default in payment of any premium, proof satisfactory to the Company is furnished that the Insured * * * has become wholly disabled by accident or disease, so that the Insured has thereby become, and presumably will be for life, wholly, continuously and permanently unable to pursue or engage in any gainful occupation, or to perform any work for compensation or profit (hereinafter referred to as 'such disability') : Upon written request by the Insured and the assignee, if any, accompanied by this Policy the Company will agree, by endorsement hereon, to waive the payment of premiums as they become due during 'such disability,' beginning on the next policy anniversary following date of endorsement. And beginning immediately after such endorsement, the Company will pay to the Insured a monthly income of Ten and 00/100 Dollars, on the first day of each calendar month during 'such disability,' after such endorsement, until the maturity of this Policy." (No claim has been made for the monthly disability benefits and the questions now under discussion involve only the waiver of premiums.)

Respondent contends that the insurer, through its agent, G. W. Eddins, waived the foregoing policy requirements as to notice and proof of disability and is estopped to assert a failure to comply with them. Appellant denies that there was any evidence of waiver or estoppel and further contends that Eddins was only a soliciting agent without any authority to waive any of its rights or estop it from asserting

same. We shall briefly review the testimony relating to these two questions.

Respondent offered a witness who testified that he represented appellant at Chesterfield until 1928, when he severed his connection with the Company and was succeeded by Mr. Eddins, who represented the Company from 1928 until his death which occurred before the trial of this case. This witness did not undertake to testify as to the nature of his duties or authority during the period when he represented the Company. On the letterhead of Mr. Eddins was the following: "Eddins Insurance Company General Agents," but there is no indication for whom he undertook to act as a general agent. Between 1926 and 1931 the insured procured various loans on the policy in question and other policies which he carried with appellant and in connection therewith executed numerous policy loan agreements. There are nine of these in the record. The instructions required that these agreements be witnessed where possible by "either an agent of this company or a Notary Public. If neither is available. some disinterested person, who is of age and who is not a relative, may act." Mr. Eddins witnessed each one of these loan agreements. He also witnessed the application for reinstatement and proofs of death heretofore referred to which were made in connection with another policy which insured had with appellant. It further appears that it was he who advised the appellant of the death of insured and requested blanks on which to file proof of death. The proofs of death were evidently forwarded to appellant by him, as it appears that appellant acknowledged such proofs in a letter to him and enclosed check for the amount due on the policy, requesting that the policy be taken up by Mr. Eddins and discharge papers executed before the check was delivered to the beneficiary. Appellant did not attempt to introduce in evidence any contract between it and Mr. Eddins showing the nature of his duties or the authority vested in him, but

offered as a witness the manager of the claims department, who testified that Mr. Eddins was only a "soliciting agent." Upon being asked who was the general agent in this territory, this witness replied: "I don't think we had one, possibly Mr. Charles M. Dukes at Pageland was the nearest man, I don't know whether his capacity was general agent or not."

The respondent testified that her husband left home four times during the fall of 1931 to go to the office of Mr. Eddins to see about the disability benefits under the terms of the policy, and on two of these occasions he was accompanied by her brother. It appears that the first trip he made with the insured to the office of Mr. Eddins was about September 1, 1931. Respondent's brother testified that on this occasion insured told Mr. Eddins that he was sick, that he was, and would continue to be, unable to do anything, and that he came to see about the policy, to which Mr. Eddins replied that to obtain the disability insurance, it would be necessary to send to the home office and get some blanks and told the insured "he would let him know or would bring them over to the house and have them filled out." The witness further testified that during this conversation the insured left with Mr. Eddins an insurance policy which he had brought along, and was requested by Mr. Eddins to go to the office of Dr. Gardner at Chesterfield for a medical examination which would be necessary. Upon arriving at his office, according to the testimony of this witness, Dr. Gardner called Mr. Eddins over the 'phone and had some conversation with reference to the examination, the details of which the witness did not understand, as he could only hear what Dr. Gardner said. In any event, according to the testimony of this witness, Dr. Gardner made a physical examination of the insured and filled out some papers which Dr. Gardner stated Eddins had requested to be turned over to him. Respondent's brother also accompanied the insured

on a second trip to the office of Mr. Eddins which was made about November 1, 1931. He testified that on this occasion the insured inquired of Mr. Eddins about his disability and that Eddins replied that "it was too late now, it (the policy) had lapsed." It will be observed that when this last conversation took place, the grace period for the payment of the premium due October 18th had not expired. There was no objection by appellant's counsel to the foregoing testimony on the ground that Eddins was without authority to represent it in the transactions referred to, which may account for the fact that respondent's testimony on the question of Eddins' authority was so general.

In support of its contention that Mr. Eddins was without authority to waive the policy requirements as to notice and proof of loss, appellant relies strongly on the following general provision contained in the policy: "Only the President, a Vice-President, the Secretary, Actuary, Assistant Secretary, or other executive officer, is empowered by the Company to make or modify this or any other contract of insurance, or to extend the time for paying any premium, or to waive any forfeiture, or to bind the Company in any manner whatsoever. These powers cannot be delegated, and must be exercised only in writing, which shall be the only evidence of such exercise." This provision was not brought to the attention of the trial Judge in any way and its effect on the question at issue was not otherwise raised in the Court below. Under these circumstances, appellant will not be permitted to raise this question for the first time here. For this reason, appellant cannot invoke in the determination of this issue the aid of the above policy provision.

But even if this contention were properly before us, we do not think it can be sustained. The respondent does not claim a waiver of any of the contractual provisions relating to the formation of the contract. Rather,

she contends that, while the contract is exactly as stated in the policy, appellant has waived certain provisions relating to its performance after the right to the waiver of future premiums accrued, those relating to furnishing proof of disability. A similar question was raised in *Life Insurance Co. of Virginia v. Williams,* 48 Ga. App., 10, 172 S. E., 101, 106, and in disposing of this contention the Court said: "According to the prevailing view, the usual clause in a policy of insurance, that no officer, agent, or other representative of the company shall have power to waive any condition of the policy except such as may be indorsed thereon or added thereto, has no reference to those stipulations which are to be performed after a loss has occurred, such as giving notice and furnishing proofs. These may be expressly waived, as by a refusal to pay or a denial of liability, or waived by conduct inconsistent with an intention to enforce a strict compliance therewith, by which the insured is led to believe that the insurer does not intend to require such compliance." Numerous authorities are cited by the Georgia Court in support of the above statement. Also, see 29 Am. Jur., 623; *Hawkins v. Agricultural Insurance Co.,* R. I., 190 A., 858.

This Court has heretofore considered the question of the authority of a soliciting agent to waive a condition precedent to the delivery of a life policy and his authority to waive a forfeiture. *Rearden v. State Mutual Life Insurance Co.,* 79 S. C., 526, 60 S. E., 1106; *Cope v. Jefferson Standard Life Insurance* Co., 134 S. C., 532, 133 S. E., 440; *Fender v. New York Life Insurance Co.,* 158 S. C., 331, 155 S. E., 577; *Able v. Pilot Life Insurance Co.,* 186 S. C., 26, 194 S. E., 628. In the above cases the soliciting agent was held to have such authority. In the later case of *Cauthen v. Metropolitan Life Insurance Co.,* 189 S. C., 356, 1 S. E. (2d), 147, these cases were reviewed and distinguished and under the circumstances there presented, it

was held that the soliciting agent did not have authority to waive a forfeiture. It appeared in the *Cauthen case* that the beneficiary and the insured were bound by the non-waiver provision and it further appeared that the insured and the beneficiary had, or should have had, actual knowledge through a course of dealing of the limited authority of the agent there involved.

However, in the instant case we find it unnecessary to determine whether an ordinary soliciting agent is authorized to waive notice and proof of disability. Where a principal clothes its agent with apparent authority to act in a certain capacity, it is bound by all the acts of such agent within the scope of such authority. An insured dealing with such an agent is not bound by any secret limitations on such apparent authority. We think the circumstances heretofore referred to, when considered together, were sufficient to warrant a reasonable inference that this agent's authority was more than that of a soliciting agent and comprehended the power to waive proof of disability entitling the insured to a waiver of future premiums, and the trial Judge committed no error in refusing the motions for a nonsuit and directed verdict on this ground. While not precisely in point, the following cases tend to sustain our conclusion: *Shearer v. Pioneer Life Insurance Co.,* 183 S. C., 490, 191 S. E., 315; *Satcher v. Woodmen of the World,* 199 S. C., 59, 18 S. E. (2d), 523; *Feinberg v. New York Life Insurance Co.,* 233 Mo. App., 707, 127 S. W. (2d), 82. Also, of interest is the case of *Rein v. New York Life Insurance Co.,* 210 Minn., 435, 299 N. W., 385, where a very similar question was involved. The decision was by a divided Court, but we think the minority view expressed in that case is more in accord with our own decisions.

The remaining question is whether the trial Judge erred in refusing the motions for nonsuit and directed verdict on the ground that there was no evi-

dence of waiver or estoppel. We think Eddins' statement to the insured on his first visit that he would procure the blanks for the filing of proofs and would let the insured know when he received them, or would bring them over to the house and "have them filled out," was sufficient to warrant the inference that the insured was lulled into a sense of security and led to believe that no further action on his part was necessary until the agent communicated further with him. On this occasion insured was also required to stand a medical examination. Of course, the credibility of this testimony was for the jury, but if believed by the jury constituted ample evidence of waiver and estoppel.

The evidence as to waiver and estoppel in the instant case is very similar to that which was held to be sufficient in *Shearer v. Pioneer Life Insurance Co., supra.* There the husband of insured informed insurer's agent of her disability and requested him to furnish her with blanks on which to file formal proof of disability and the agent promised to take up the matter with the insurer and obtain the blanks, but failed to do so and finally advised the insured that the policy had lapsed for nonpayment of premiums. Also, see *Alexander v. Durham Life Insurance Co.,* 181 S. C., 331, 187 S. E., 425; *Satcher v. Woodmen of the World, supra,* 29 Am. Jur., 857.

It will also be observed that there is evidence that ■ Eddins stated to the insured about November 1, 1931, during the grace period, that the policy had lapsed and it was then too late for him to file proof of disability. The policy required that the proof of disability be furnished while the policy was "in full force and effect and before default in payment of any premium." The premium did not become due, in the sense that the failure to pay it would result in a forfeiture of the policy, until the grace period had expired. Insured could have filed such proof at any time during the grace period. *Life Insurance Co. of*

*Virginia v. Williams, supra,* 48 Ga. App., 10, 172 S. E., 101; *Equitable Life Assurance Society v. MacKirgan,* 5 Cir., 86 F. (2d), 271.

While not material to the issues on this appeal, in the interest of a full statement of the facts, we might add that appellant admitted that at the time of the alleged forfeiture, the policy had a net value of 97¢ which was applied by it to the purchase of paid-up extended insurance for $17.00. This fact was not mentioned to the beneficiary, probably through inadvertence, until she filed claim on the policy in 1936, at which time appellant tendered to respondent said amount of $17.00. Respondent refused to accept said amount and shortly thereafter this action was instituted. The trial was not had until October, 1943, or a period of seven years after the action was commenced. As a result of this unusual delay many of the important witnesses were dead when the case was reached for trial. This is very unfortunate. Certainly either of the parties could have forced an earlier trial and if the appellant has suffered detriment because of the death of several witnesses, it is hardly in a position to complain of the delay. A somewhat similar case of delay was presented in the case of *Wayne v. New York Life Insurance Co.,* 8 Cir., 132 F. (2d), 28.

All exceptions are overruled and judgment affirmed.

MR. CHIEF JUSTICE BAKER and MESSRS. ASSOCIATE JUSTICES FISHBURNE, STUKES and TAYLOR concur.