15065

EDWARDS v. UNION CENTRAL LIFE INS. CO.

(8 S. E. (2d), 488)

November, 1938.

*Messrs. McEachin & Townsend,* for appellant,

*Messrs. Royall & Wright,* for respondent,

April 12, 1940.

The opinion of the Court was delivered by MR. C. T. GRAYDON, ACTING ASSOCIATE JUSTICE.

The plaintiff in this case, with her husband, operated a six-horse farm in Florence County near Mars Bluff. The plaintiff and her family had lived upon this place, which is called the Saunders Place (also called Anne Gregg Place),

for five years and was paying for the property occupied as a farm and some land adjacent thereto, the sum of Three Hundred Fifty ($350.00) Dollars per annum rent. In 1937 the plaintiff decided to make a change and began to negotiate for the purchase of land to conduct her farming operations upon in the year 1938 and in the early part of November approached one L. B. Harper, a real estate agent, to attempt to purchase farming property suitable to her needs. Harper showed the plaintiff a farm known as the Lide-Critcher Place, about six miles from Florence and in company with George A. Bacot, the field representative of the Union Central Life Insurance Company, defendant herein, carried the plaintiff out and showed her this particular farm. The plaintiff testified that she liked the farm and decided to take it and then gave the agent, Bacot, Three Hundred ($300.00) Dollars as a good-faith payment in the offer to purchase the Lide-Critcher Place. At the time of this transaction Bacot told the plaintiff that it would be probably ten (10) days before he could hear from the defendant company as to whether the company would approve and accept the plaintiff's offer to purchase and that such approval, as shown by the written contract, was required to be by the home officers in Cincinnati, Ohio.

On the 16th of November, some ten (10) days after the original negotiations a man named Cormell (Harper's son-in-law) came to the plaintiff's home and told the plaintiff that she could not get the Lide-Critcher farm but at that time he did not return nor offer to return the Three Hundred ($300.00) Dollars deposit made by the plaintiff in connection with the offer to purchase said farm. On that visit Cormell told the plaintiff that there was another farm which he would like for plaintiff to look at and determine whether she desired to purchase the same.

On the following day, according to the chronology stated in the record, the 17th of November, the plaintiff and her husband went to the office of Harper to inquire about the new place and were told that the same was known as the

Parrott Place, located near Early's Cross Roads in Darlington County and this place was then inspected. The agents for the defendant company were then informed that the plaintiff could not delay the matter, to await a hearing on the offer to purchase from the home office, and informed the agents that if they could give immediate notice as to the acceptance of plaintiff's proposal, she would take the property. The agents informed the plaintiff that they would call Colonel Spratt, termed general manager of the company, and that immediate notice would be given to her of the approval or disapproval of the contract. On the following day the plaintiff was informed by the agents that the proposition had been accepted and that possession could be taken of the entire place at once and pursuant to that notice, the plaintiff began to take down her wire fence, to authorize the tenants to begin moving, to turn the hogs in on the peas and forage, and to generally move for the ensuing year. Several trips were made to the Parrott Place for the plaintiff testified that she considered the transaction as definitely closed.

On the 19th of November, Bacot and Harper came to the place of the plaintiff and brought with them a contract similar to the one signed in the first instance and the plaintiff's daughter signed this contract, dated November 17th, with the assurance that there was no comeback to it and that plaintiff's husband, Sam, could go to work planting oats; that the contract had been confirmed; that the timber could be cut and that it was all right to go ahead and build a house for the son of the family. At the same time they told the plaintiff further that an attorney had drawn up a paper and the same had been signed by Bacot, and Harper had probated it, in which Parrott had released the place and that such release was in their possession. Nothing further was heard until the 27th of November when the check was returned to the plaintiff and Harper then told the plaintiff that the man, Parrott, had made his payment and got it in to the home office before the contract came in and that the contract had

been refused by the officers of defendant and check sent back.

The plaintiff further testified that as a result thereof she was forced to move to another different place, to pay in addition One Hundred ($100.00) Dollars more in rent than she would have had to pay at the Saunders Place, and that she had been put to a considerable amount of inconvenience and expense and had lost the opportunity to purchase other farms which she might have been interested in.

The complaint may be construed as alleging either a cause of action in fraud and deceit *ex delicto* or a cause of action for damages suffered *ex contractu* by the failure to secure the property which the plaintiff claims she had contracted for, but throughout the entire case, the Judge ruled, and the case was tried without objection, upon the theory that it was an action *ex delicto* for fraud.

The two theories upon which the case under the complaint might have been tried are entirely different.

On the one hand had the trial Judge construed the complaint as alleging a cause of action for damages arising out of a breach of a contract, there would have been no requirement that the proof be furnished that the agent of the defendant was acting within the actual scope of his authority but only that he was acting within the apparent scope of his authority. The construction which was placed upon the complaint by the trial Judge was, however, that it was an action in tort and, therefore, that it was necessary that it be proven that the agent was acting within the actual scope of his authority.

There was no testimony that the agent was acting within the actual scope of his authority; in fact, the testimony tends to show that the agent far exceeded any authority which he might have had either verbal or otherwise and that his actions were unwarranted under the contract which he held as well as the instructions which were given to him. The plaintiff had some knowledge of this fact by the contract which had been submitted and signed there-

tofore and, further, the plaintiff allowed and permitted her daughter to sign another contract after all of the negotiations containing the identical provisions which were in the first contract.

There was no intimation by counsel for the plaintiff that he intended to allege nor intended to rely upon a cause of action for a breach of a contract in the lower Court nor in his exceptions to this Court and, therefore, that issue was not and is not for decision.

Under the pleadings as the same were construed by the trial Judge and under the theory upon which the case was tried, from which there is no appeal the ruling of the trial Judge was correct. The question of the right of the proper party to recover in an action for a breach of the contract was not before the trial Court nor is it before this Court on appeal.

The judgment of the lower Court is affirmed.

MR. CHIEF JUSTICE BONHAM and MESSRS. JUSTICES BAKER and FISHBURNE concur.