412 F.2d 505
 Glenn B. HESTER and J. B. Fuqua, Appellees,
v.
NEW AMSTERDAM CASUALTY COMPANY, a Corporation, Appellant.
Glenn B. HESTER and J. B. Fuqua, Appellees,
v.
Keith T. JONES and Estelle J. Jones, Appellants.
Glenn B. HESTER and J. B. Fuqua, Appellants,
v.
NEW AMSTERDAM CASUALTY COMPANY, a Corporation, Keith T. Jones, and Estelle J. Jones, Appellees.
 No. 12819.
 No. 12820.
 No. 12821.
 United States Court of Appeals Fourth Circuit.
 Argued March 5, 1969.
 Decided June 13, 1969.
 
 COPYRIGHT MATERIAL OMITTED D. Kenneth Baker, Darlington, S. C., and Carl E. Sanders (James P. Mozingo, III, Darlington, S. C., and William J. Cooney on brief), for Glen B. Hester and J. B. Fuqua.
 D. W. Robinson, Columbia, S. C., and Hugh L. Willcox, Florence, S. C. (Robinson, McFadden & Moore, Columbia, S. C., on brief), for New Amsterdam Cas. Co.
 Dan M. McEachin, Florence, S. C. (McEachin & McEachin, Florence, S. C., on brief), for Keith T. Jones and Estelle J. Jones.
 Before HAYNSWORTH, Chief Judge, BOREMAN and BUTZNER, Circuit Judges.
 BUTZNER, Circuit Judge:
 
 
 1
 Mr. and Mrs. Keith T. Jones and the New Amsterdam Casualty Company appeal from judgments of $960,000 in favor of Glen B. Hester and J. B. Fuqua. We affirm on the issue of liability, but remand for the recomputation of damages.
 
 
 2
 In 1963, Jones acquired an option to purchase 5,600 acres of Florida timberland for $550,000. In order to obtain a purchase money loan from the Liberty National Bank of Savannah, Georgia, Jones was required to show development of the tract. Accordingly, he contracted with Valdosta Plywoods, Inc., which agreed to lumber the tract paying $25 per 1,000 board feet, with minimum payments of $60,000 during the year ending March 1, 1965 and $100,000 during each of nine succeeding years.[1] The bank also required a performance bond on the timber contract. Jones obtained this from New Amsterdam Casualty Company. Although Mr. and Mrs. Jones were named obligees, New Amsterdam required them to execute an indemnity agreement to which no reference was made in the bond.
 
 
 3
 On July 31, 1964 Jones sold the property and assigned the timber contract along with the performance bond to Hester and Fuqua for $850,000. At the time of the sale it was represented to Hester and Fuqua that all bond premiums were paid and that New Amsterdam assented to the assignment. A few months later Hester and Fuqua were surprised by New Amsterdam's claims that the premiums had not been paid in full, that New Amsterdam had not consented to the assignment, and that even if its consent were given, Hester and Fuqua would be subject to Jones' obligation of indemnity.
 
 
 4
 In the spring of 1965 Valdosta failed to pay the full amount due for the first year of its cutting contract, and in the months that followed it fell further in arrears, eventually becoming bankrupt. After an unsuccessful attempt to cut the timber themselves, Hester and Fuqua sold the property. In the meantime, they filed this suit alleging a conspiracy to defraud. Although the district judge found insufficient evidence to establish a conspiracy, he concluded that Mr. and Mrs. Jones and New Amsterdam were guilty of fraud.
 
 I.
 
 5
 The district judge found that Jones misrepresented to Hester and Fuqua that the premiums on the performance bond were paid. In concluding that this misrepresentation made Jones liable, the court applied the law of Florida, which as the law of the place of wrong, is controlling. Restatement of Conflict of Laws § 377, n.4 (1934). The essential elements of fraud under Florida law are: "(1) a false statement of fact; (2) known by the defendant to be fraudulent at the time it was made; (3) made for the purpose of inducing the plaintiff to act in reliance thereon; (4) action by the plaintiff in reliance on the correctness of the representation; and (5) resulting damage to the plaintiff." Tonkovich v. South Florida Citrus Indus., 185 So.2d 710 (Fla.2d Dist.Ct. App.1966), remanded, 196 So.2d 438 (Fla. 1967), and rev'd on other grounds, 202 So.2d 579 (Fla.2d Dist.Ct.App.1967).
 
 
 6
 Abundant evidence shows that Jones knowingly made a false statement of fact. Hester testified that Jones told him on the morning of the sale that the premium of $12,000 for the ten-year period had been paid. Hester also testified that Jones' agents had previously made similar representations. Hester is corroborated by R. T. Brazzell, a real estate agent acting for Jones, who testified that he told Hester that he understood the premiums were paid in full.
 
 
 7
 The truth about the bond premiums differed considerably from the information furnished Hester. The obligation of the bond was to be reduced each year as Valdosta made its minimum payments. Consequently, premiums decreased from year to year. The first year's premium was $12,000, and it was estimated that premiums over the ten-year life of the bond would aggregate $60,000, but no premium schedule was attached to the bond. The Valdosta timber contract provided that Jones should pay for the bond. He had, however, paid only the first year's premium.
 
 
 8
 We find no merit in Jones' argument that the Statute of Frauds and the parol evidence rule defeat the plaintiffs' claim because the written contract of sale did not mention bond premiums. Even though the contract was in writing, parol evidence may be introduced to show that it was fraudulently induced. Palmetto Bank & Trust Co. v. Grimsley, 134 S.C. 493, 133 S.E. 437, 51 A.L.R. 42 (1926); 37 Am.Jur.2d Fraud and Deceit, § 451 (1968).
 
 II.
 
 9
 The district judge also found that Jones and New Amsterdam were liable because they failed to disclose to Hester and Fuqua that Mr. and Mrs. Jones, the obligees on the bond, had agreed to indemnify New Amsterdam. Florida law clearly defines when nondisclosure of facts amounts to actionable fraud. In Ramel v. Chasebrook Constr. Co., 135 So.2d 876, 882 (Fla.2d Dist.Ct. App.1961), the court said:
 
 
 10
 "In the absence of a fiduciary relationship, mere nondisclosure of all material facts in an arm's length transaction is ordinarily not actionable misrepresentation unless some artifice or trick has been employed to prevent the representee from making further independent inquiry. * * * One exception to this rule is that nondisclosure of a material fact may be deemed fraudulent where the other party does not have equal opportunity to become apprised of the fact."
 
 
 11
 Here, neither Jones nor New Amsterdam were fiduciaries, and they employed no artifice or trick. Therefore, Hester and Fuqua must show nondisclosure of a material fact which they did not have equal opportunity to know
 
 
 12
 The bond provided that it should not be assignable without the written consent of the surety. Therefore, the contract of sale required the written consent of New Amsterdam, and Jones requested Edward F. Egan, a vice-president of Berens Insurance Service which had been helpful in obtaining the bond, to get New Amsterdam's consent. Egan, in turn, wrote Carl Schmidt, a vice-president of New Amsterdam, asking what action should be taken on Jones' request. Schmidt authorized Egan as attorney in fact to acknowledge the notification of assignment with the understanding that New Amsterdam did not waive its rights, equities, or priorities. He provided a form which Egan could use after he determined whether Mr. and Mrs. Jones or Valdosta were assigning to Hester and Fuqua. He also cautioned Egan that it would be necessary for the Liberty National Bank to acknowledge and consent to the assignment and that New Amsterdam should be furnished a copy of the bank's consent before Egan wrote any letter on behalf of New Amsterdam. Egan transmitted these instructions to Jones, but Jones claims that he never received Egan's letter.
 
 
 13
 When the parties met in Florida to close the transaction, Hester and Fuqua discovered that New Amsterdam's consent had not been received, and, consequently, they refused to close the deal. As a result of a call which Jones made to the Berens Company explaining the situation, Egan sent the following telegram:
 
 
 14
 "New Amsterdam Casualty Co. agrees to acknowledge assignment of Valdosta Plywood Bond provided that Liberty National Bank either agrees to acknowledge such assignment or agrees to waive all rights under the bond.
 
 
 15
 Edward F. Egan
 Attorney in Fact
 New Amsterdam Casualty Co."
 
 
 16
 Relying on the telegram, the plaintiffs paid Jones the purchase price of $850,000, and simultaneously the mortgage held by the Liberty National Bank was canceled, and the bank released its rights in the bond. At no time was it disclosed to Hester and Fuqua that Jones, as obligee, had agreed to indemnify New Amsterdam.
 
 
 17
 There can be no doubt that the undisclosed indemnity agreement was a material fact. New Amsterdam took the position that it was vital to the bond. In October 1964, when a dispute arose about liability for premiums, New Amsterdam wrote Hester and Fuqua that since Mr. and Mrs. Jones were obligees on the bond and indemnitors, "The bond was, to all intents and purposes, a moral effect bond." New Amsterdam further explained that if the bond was assigned with its assent (which it denied), Hester and Fuqua, as assignees of Jones, would be subject to the defense provided by Jones' indemnity agreement. Thus, any claim Hester and Fuqua made under the bond could be countered by a cross-claim under the indemnity agreement.
 
 
 18
 The plaintiffs have adequately shown that their opportunity for knowing of the indemnity agreement was not equal to Jones' and New Amsterdam's. The indemnity agreement was retained by New Amsterdam. There was no reference to it in the bond or in the copy of the bond furnished the plaintiffs. It was not mentioned in any of the negotiations. And while it would not be unusual to expect that the principal on a performance bond had agreed to indemnify the surety, it cannot be said that indemnification by the obligees is so frequently exacted that knowledge of this requirement should be expected of Hester and Fuqua. On the other hand, New Amsterdam and Jones knew of the indemnity agreement.
 
 
 19
 Closely related to the issue of the opportunity to know the facts is the claim that Hester and Fuqua failed to exercise due diligence to ascertain the facts. We find this defense to be without merit. Although Hester and Fuqua were required to use reasonable diligence for their own protection, Potakar v. Hurtak, 82 So.2d 502 (Fla.1955); Kaminsky v. Wye, 132 So.2d 44 (Fla.2d Dist.Ct.App. 1961), they discharged this obligation by their examination of pertinent papers, their inquiries,[2] and their insistence upon New Amsterdam's written assent to the assignment. Cf. Board of Pub. Instruction v. Everett W. Martin & Son, Inc., 97 So.2d 21 (Fla.1957).
 
 
 20
 New Amsterdam contends that when Egan consented to the assignment of the bond, he was not acting as its agent within his actual or apparent authority.[3] The existence and scope of his authority created a factual issue to be determined by the trier of fact. Seaboard Properties, Inc. v. Bunchman, 278 F.2d 679, 682 (5th Cir. 1960), and his authority could be inferred from the facts of the case. Thomkin Corp. v. Miller, 156 Fla. 388, 24 So.2d 48, 49 (1945). The district judge properly concluded that Egan had actual, as well as apparent, authority to act as New Amsterdam's agent. Egan's insurance company collected the premiums. He was charged by New Amsterdam with the responsibility of handling the details of lodging the bond as collateral with Liberty National Bank. When the proposed transaction between Jones and Hester and Fuqua was called to New Amsterdam's attention, it specifically authorized Egan to acknowledge the notification of assignment as attorney in fact. But, unfortunately, New Amsterdam did not direct, and Egan did not volunteer, disclosure of information that even if assent were given to the assignment, New Amsterdam would subject Hester and Fuqua to the defense of Jones' indemnity agreement. New Amsterdam, having placed Egan in a position to commit fraud while apparently acting within the scope of his authority, is liable for his acts. Industrial Ins. Co. v. First Nat'l Bank, 57 So.2d 23 (Fla.1952); West Florida Land Co. v. Studebaker, 37 Fla. 28, 19 So. 176 (1896); Restatement (Second) of Agency § 261 (1957).
 
 
 21
 Finally, New Amsterdam stands on the clause of the bond which provides: "This bond nor any interest thereunder shall not be assignable without the written consent of the Surety." New Amsterdam contends that it never consented to the assignment because its letter of instructions to Egan only authorized him to advise the parties that New Amsterdam "acknowledges the Notification of Assignment." This instruction, it asserts, did not authorize Egan to "consent" to the assignment. New Amsterdam's argument is clearly without merit. At no time did either New Amsterdam or Egan advise the parties that their transaction would be frustrated because the surety's approval was not phrased in the precise language of the bond. If New Amsterdam actually proposed that Egan should only acknowledge the "Notification of Assignment," without then intending to "consent" to the assignment, New Amsterdam's proposal and Egan's telegram were fraudulent. It would be difficult to devise a greater deception.
 
 
 22
 Jones contends that he is not liable for nondisclosure because the indemnity agreement was collateral to the bond, and he assumed that it would not prejudice Hester and Fuqua. This contention is eroded, however, by Jones' letter shortly after the transaction that Hester and Fuqua "have purchased my position in total" and that he wished to cancel his obligation to New Amsterdam. He left no doubt of his conception of the transaction when he added that the surety might be interested in negotiating with Hester and Fuqua to continue the bond if they so desired. These statements are in sharp contrast to Jones' conduct before the transaction was closed. At that time he never suggested to Hester and Fuqua that their purchase of his total position included an indemnity agreement or that continuation of the bond would depend on negotiations with New Amsterdam.
 
 III.
 
 23
 The district judge held that Estelle Jones, wife of Keith Jones, was also liable. The evidence discloses sufficient support for this conclusion. Mrs. Jones was a part owner of the property and a party to the timber contract. She was present when the negotiations with New Amsterdam for the bond took place. She was an obligee on the bond, and she signed the indemnity agreement. Brazzell represented her interest, as well as her husband's, when he represented that all premiums were paid. Mrs. Jones was present when her husband told Hester that the premiums were paid and that the bond was in full force and effect. She made no disclosure concerning the existence of the indemnity agreement. In view of all of this, there is no sound reason for making any distinction between her and Mr. Jones. She is liable both for the misrepresentations regarding the premiums and her failure to disclose the indemnity agreement.
 
 IV.
 
 24
 We turn next to the question of damages. After Valdosta defaulted, Hester and Fuqua attempted unsuccessfully and at considerable expense to conduct logging operations. Finding this impractical, they sold the property for $850,000. Their purchaser required a title unencumbered by the timber contracts, and accordingly Hester and Fuqua, by mutual agreement with the timber cutting companies, terminated the contracts. Despite Valdosta's default, Hester and Fuqua have not been paid any sums under the performance bond.[4]
 
 
 25
 Under Florida law, the measure of damages for fraud is the "benefit of the bargain." This is the difference between the actual value and the represented value of the property that the defrauded person was induced to purchase. Williams v. McFadden, 23 Fla. 143, 1 So. 618 (1887); West Florida Land Co. v. Studebaker, 37 Fla. 28, 19 So. 176 (1896). In applying the benefit of the bargain rule, the district judge valued the land and timber at $850,000. But, as the district judge noted, Hester and Fuqua bargained for more than land and timber. Their purchase from Jones included the assignment of the Valdosta contract secured by the Valdosta performance bond. The district judge reasoned that the represented value of the property was the $850,000 tract plus the bonded timber cutting contract, which had a minimum value of $960,000 — a total of $1,810,000. Because Hester and Fuqua sold the land for $850,000, the resulting damage to them, the district judge held, was $960,000.
 
 
 26
 We agree that the district judge was correct in applying Florida's benefit of the bargain rule. His valuation of $850,000 for the land and standing timber is supported by the proof. However, the total of $1,810,000, which includes the tract and bonded timber contract, should be subjected to certain deductions and adjustments in addition to the $850,000 which the district court allowed.
 
 
 27
 First, by the terms of the bond, New Amsterdam's gross obligation of $960,000 was to be reduced by all amounts Valdosta paid on the timber cutting contract. Consequently, the defendants are entitled to a credit in the amount of Valdosta's payments.
 
 
 28
 Second, in the event of Valdosta's default, New Amsterdam was not required to pay the balance due under the bond in a lump sum. It could spread its payments over ten years, and in no one year was it required to pay more than $100,000. Therefore, in order to compute the damages suffered by Hester and Fuqua, it will be necessary to reduce to present value the payments which would have been due over a ten-year span.
 
 
 29
 Third, if New Amsterdam had recognized the bond at the time of Valdosta's default, and if Hester and Fuqua had not sold the property, New Amsterdam would have had a right to cure the default by cutting timber in accordance with the timber cutting contract. Thus it could have cut sufficient timber to pay Hester and Fuqua the amount due on the bond (reduced to its present value) computed at $25 per 1,000 board feet. If this had been done, the value of the tract would have been reduced by the difference between its worth with the standing timber (which the district judge placed at $850,000) and its hypothetical worth assuming New Amsterdam had removed sufficient timber to cure the default. Upon remand, the court should receive evidence from experienced appraisers on this difference in value, and allow it as an additional credit against the sum of $1,810,000.
 
 
 30
 In directing the recomputation of damages, we do not foreclose the allowance of pre-judgment interest. This is discretionary with the district judge.
 
 
 31
 In No. 12,819 and No. 12,820, the judgment is affirmed in part, and the case is remanded for further proceedings in accordance with this opinion.[5] In No. 12,821, the appeal is dismissed.
 
 
 
 Notes:
 
 
 [1]
 Valdosta's contract allowed it to cut hardwood above 10 inches. Later Jones contracted with Bullard Timber Company for the cutting of cypress. Bullard provided a performance bond written by New Amsterdam. The Bullard transaction, however, plays no important part in the determination of this case
 
 
 [2]
 Hester testified Egan told him before the transaction was closed that the bond was in full force and effect
 
 
 [3]
 The relationship between New Amsterdam and Egan satisfies South Carolina's definition of agency. See Peeples v. Orkin Exterminating Co., 244 S.C. 173, 135 S.E.2d 845, 848 (1964). The conflict of laws rules of the forum, South Carolina, then determines whether the law of Florida, Washington, D.C., or Maryland should be applied to determine whether New Amsterdam is vicariously liable for Egan's act. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Apparently, however, South Carolina has not ruled on this point, and in the absence of a South Carolina case, the district judge applied Florida law. We find no error in this. The bond guaranteed the performance of a contract in that state. It was there that Jones assigned the bond, and Egan's telegram — dispatched from Washington — was intended to take effect there just as though Egan had journeyed to Florida and personally participated in the closing. See New York Life Ins. Co. v. Chapman, 132 F.2d 688, 692 (8th Cir.), cert. denied, 319 U.S. 749, 63 S.Ct. 1158, 87 L.Ed. 1704 (1943); Restatement of Conflict of Laws § 387 (1934); Reese and Flesch, Agency and Vicarious Liability in Conflict of Laws, 60 Colum.L.Rev. 764, 773 (1960). The outcome would not differ if the law of Washington, D. C., were applied as Hester and Fuqua suggest. See Prudential Ins. Co. v. Saxe, 134 F.2d 16 (D.C.Cir.), cert. denied, 319 U.S. 745, 63 S.Ct. 1033, 87 L.Ed. 1701 (1943); Peyser v. Volsk, 74 App.D.C. 1, 119 F. 2d 462 (1941). New Amsterdam asks for application of Maryland's general rule that persons dealing with an alleged agent are put on inquiry as to the extent of his authority. But as Maryland recognizes, "The corollary to this rule is that the scope of an agent's apparent authority governs the rights of third persons against the principal." Chesapeake Supply & Equip. Co. v. Manitowoc Eng'r Corp., 232 Md. 555, 194 A.2d 624, 629 (1963)
 
 
 [4]
 The parties conducted extensive settlement negotiations. New Amsterdam conceded that the indemnity agreement should not impair its obligation to Hester and Fuqua, but by this time Valdosta had defaulted on its first year's payment, and New Amsterdam had focused its defense on failure to receive the premiums and lack of consent to Jones' assignment. This shift in New Amsterdam's position during settlement negotiations cannot be held to excuse its nondisclosure of the indemnity agreement. New Amsterdam agreed to recognize the validity of the bond and its assignment, but Hester and Fuqua initially declined to pay the premiums. Later when they agreed to pay, New Amsterdam, learning of Valdosta's default, withdrew its offer of settlement. Hester and Fuqua then moved for summary judgment alleging a contract of settlement. Their motion was denied. Hester v. New Amsterdam Cas. Co., 268 F.Supp. 623 (D.S.C.1967) (Russell, J.). The denial of the motion is the subject of Hester and Fuqua's cross appeal in No. 12,821. In view of our disposition of the appeal, it is unnecessary to decide the merits of the cross appeal, and it is dismissed
 
 
 [5]
 Although we have affirmed the district court's judgment of liability against both New Amsterdam and Mr. and Mrs. Jones, our decision should not be construed to relieve Mr. and Mrs. Jones of their indemnity agreement. The Jones' obligation to New Amsterdam was not litigated in this proceeding, and, consequently, that issue is not before us