1728

Rufus VEREEN and Lillian McCray, Co-Administrators of the Estate of Michael Vereen, Deceased, Appellants v. LIBERTY LIFE INSUR-ANCE COMPANY, Howard Martin, and Ben Canteen, Jr., Respondents.

(412 S.E. (2d) 425)

Court of Appeals

*Orrie E. West* and *Kenneth C. Inman,* Conway, *for appellants.*

*William E. Lawson,* of *Hudson & Lawson Law Offices,* Myrtle Beach, *for Liberty Life Ins. Co.*

*Howard Martin, pro se.*

*Ben Canteen, Jr., pro se.*

Heard Feb. 20, 1991.

Decided May 13, 1991.

BELL, Judge:

These statutory wrongful death and survival actions were filed by the personal representatives of Michael Vereen against Ben Canteen, Jr., Howard Martin, and Liberty Life Insurance Company. The representatives alleged that Vereen experienced conscious pain and suffering and death as the proximate result of the wrongful procuring by Canteen and the negligent issuing by Liberty Life and its agent, Martin, of an insurance policy on Vereen's life without his knowledge or consent. The circuit judge directed a verdict in favor of Canteen, Martin, and Liberty Life on the survival action. On the wrongful death action, he granted the representatives' motion for a directed verdict as to liability against Canteen and Martin, but denied the motion as to Liberty Life. He submitted to the jury the issue of Liberty Life's liability and the issue of damages for wrongful death. The jury returned a verdict against Canteen and Martin for $3,565.95 actual damages and $30,026.30 punitive damages. They exonerated Liberty Life. Vereen's representatives moved for judgment notwithstanding the verdict or, in the alternative, for a new trial on the ground that the evidence as a matter of law supported a verdict against Liberty Life. The motions were denied. The representatives appeal the circuit court's denial of their motions, as well as the admission and exclusion of certain evidence, failure to charge the statutory life expectancy table, and the directed verdict on the survival claim. We affirm in part and reverse in part and remand.

Viewed in the light most favorable to Liberty Life, the facts are as follows. Martin had been an insurance agent for

twenty-five years, the last several of which were spent with Liberty Life. Canteen knew him as an agent who would write life insurance on anyone who was sick, old, or had a dangerous job. Martin previously had written several policies on the lives of others for which Canteen had paid the premiums. As a result, his supervisor had instructed him not to write any more insurance for Canteen.

Deliberately disregarding his instructions, Martin went to Canteen's house in January, 1985, where he filled out an application for insurance on Vereen's life using information supplied by Canteen and known by Martin to be false. Among other things, the application falsely named Vereen as the applicant for and owner of the policy. It also named as the beneficiary a fictitious nephew of Vereen. The fictitious beneficiary was used after Martin told Canteen he was forbidden to write any more insurance with Canteen as the beneficiary. Martin later admitted he lied on the application by stating that he had known Vereen for three years and by swearing as a witness to Vereen's signature. He also confessed he fabricated stories to Liberty about the policy out of fear of losing his job.

In consequence of Martin's active deceit and concealment, Liberty issued a policy upon the life of Michael Vereen, although Vereen had not sought insurance and, in fact, was unknown to Martin. Canteen paid the policy premiums to Martin. Vereen never knew of the issuance of the policy.

Exactly three months after Martin and Canteen completed the falsified life insurance application, Vereen's body was found in a wooded area with a shotgun blast to the chest. Canteen supplied Martin with Vereen's death certificate and Martin requested payment of benefits for Vereen's supposed beneficiary, the fictitious nephew. Upon receiving the check from Liberty Life, Martin delivered it to Canteen. Canteen and a confederate pretending to be Vereen's nephew cashed the check at a bank where Martin knew and had introduced Canteen to the branch manager. Canteen thereafter gave Martin a cashier's check for $9,500.00

An investigation of the murder led authorities to Canteen, who was indicted for procuring Vereen's murder for the purpose of collecting the insurance proceeds from Liberty Life. Canteen pleaded guilty and was sentenced to life in prison as

an accessory before the fact in the murder of Michael Vereen. Martin pleaded guilty to supplying false insurance information and unlawfully receiving the $9,500.00.

This case presents a classic, though tragic, illustration of why the law prohibits issuing policies on the life of a person without his knowledge or consent. *See Ramey v. Carolina Life Insurance Co.*, 244 S.C. 16, 25, 135 S.E. (2d) 362, 366-67 (1964). A life insurance policy issued in favor of a beneficiary who has no relationship to the insured places the life of the insured at risk; it gives the beneficiary a pecuniary interest in seeing that the innocent insured dies.

## I.

Although Vereen's representatives do not contend Liberty Life knowingly issued the policy without Vereen's consent, they assert the doctrine of respondeat superior required the trial judge to hold Liberty Life liable for the death of Michael Vereen as a matter of law. They note that Liberty Life admitted Martin was its agent. They then argue that: (1) Liberty Life put up no evidence that Martin was not acting within the "apparent scope" of his agency; (2) Martin could not have procured, delivered, and kept in effect the policy on Vereen's life except for the fact that Liberty Life clothed him with "apparent authority" to do so; and (3) Martin was acting within the scope of his employment when he issued the policy on Vereen's life.

The first argument is manifestly without merit. The fact that Liberty Life put up no evidence as to the scope of Martin's agency does not entitle Vereen's representatives to a directed verdict or judgment notwithstanding the verdict. As the plaintiffs and the parties alleging "apparent authority," the representatives had the burden of production and persuasion on that issue. *See Grier v. Cornelius*, 247 S.C. 521, 148 S.E. (2d) 338 (1966). Liberty Life was free to leave the burden of proof on the representatives and simply rely for its defense on cross examination of their witnesses. *See Eargle v. Sumter Lighting Co.*, 110 S.C. 560, 96 S.E. 909 (1918). Furthermore, evidence is not rendered undisputed simply because there is no direct evidence contradicting it; there still remains the question of its inherent probability, the

credibility of the witness, and the inferences to be drawn. *See Ingram v. Davis*, 131 S.C. 326, 125 S.E. 920 (1924); *Terwilliger v. Marion*, 222 S.C. 185, 72 S.E. (2d) 165 (1952).

The argument that Martin was able to procure, deliver, and keep in effect the policy on Vereen's life only because Liberty Life clothed him with "apparent authority" is premised upon a misunderstanding of the law. In making their "apparent authority" argument, Vereen's representatives focus on the relationship between Martin and Liberty Life. The proper focus, however, is not on the relationship between the principal and the agent, but on that between the principal and the third party. *See Orphan Aid Society v. Jenkins*, 294 S.C. 106, 109-10, 362 S.E. (2d) 885, 887 (Ct. App. 1987). "Apparent authority" may serve as a basis of liability for a principal only when the principal manifests to a third party that the agent has certain authority and the third party reasonably relies on that manifestation. *Id.* The test is whether the principal placed the agent in a position which would cause persons of ordinary prudence and with reasonable knowledge of business usages and customs to believe the agent possesses certain authority and to deal with the agent. *Chambers of South Carolina, Inc. v. Entrepreneur, Inc.*, 292 S.C. 97, 100, 354 S.E. (2d) 921, 923 (Ct. App. 1987).

In this case, Canteen could not have believed Liberty authorized Martin to collude with him in procuring a life insurance policy by lying on the application and then assisting him to pursue a fraudulent claim for benefits in return for a share of the proceeds. Moreover, Canteen knew that Martin was acting outside the scope of his actual authority, because he knew the principal had expressly forbidden Martin to write any more insurance for Canteen. In other words, there is no third party who reasonably relied on Martin's conduct. Certainly neither Canteen, who himself was part of the fraud, nor Vereen, who never knew the policy existed, can be said to have relied on Martin's apparent authority.

The further argument that Liberty Life is liable because Martin was acting within the scope of his employment when he issued the policy on Vereen's life is likewise without merit.

An important factor in determining if an employee acted within the scope of his employment is whether the act was in furtherance of the employer's business. *Crittenden v. Thompson-Walker Co.*, 288 S.C. 112, 341 S.E. (2d) 385 (Ct. App. 1986). If he acts for some independent purpose of his own, wholly disconnected from the furtherance of his employer's business, his conduct falls outside the scope of his employment. *Id.*

For a number of reasons, it cannot be said as a matter of law that Martin acted in furtherance of Liberty's business when he wrote the policy on Vereen's life. First, he admitted lying to the company's investigator, to the police, and in deposition testimony about how the policy came into existence. Second, he admitted conducting all business regarding the policy through Canteen without ever meeting Vereen. Third, he admitted falsifying the application for insurance. Fourth, he never attempted to deliver the policy to Vereen, and after Vereen's death, delivered the proceeds to Canteen, even though the named beneficiary was a supposed nephew of Vereen. Fifth, he admitted introducing Canteen to a bank branch manager he knew in order to prevent problems in cashing the check. Finally, he admitted accepting $9,500.00 from Canteen after Canteen received the policy proceeds.

It is at least reasonably inferable, if not outright obvious, that Martin did not act in furtherance of his employer's business, but instead to defraud his employer into paying the insurance proceeds. We hold, therefore, that the circuit judge properly refused to grant the motions by Vereen's representatives for directed verdict, judgment notwithstanding the verdict, and new trial.

## II.

Vereen's representatives also claim the circuit judge erred in admitting evidence of an earlier guilty plea by Vereen to possession of marijuana, and in refusing to admit testimony from Vereen's parents concerning the effect his death had on them. We hold there was no error with respect to admission of the guilty plea and we do not reach the issue concerning exclusion of the parents' testimony.

The admission or exclusion of evidence is addressed to the sound discretion of the trial judge. *Hook v. Rothstein*, 281 S.C. 541, 316 S.E. (2d) 690 (Ct. App.), *cert. denied*, 283 S.C. 64, 320 S.E. (2d) 35 (1984). The exercise of his discretion will not be disturbed on appeal absent a clear showing of abuse and prejudicial legal error. *Id.* No such showing has been made here.

As a beneficiary in this wrongful death action, the questions of whether Vereen's wife was entitled to damages, and if so how much, were properly before the jury. The potential damages included loss of companionship and loss of society. *Smith v. Wells*, 258 S.C. 316, 188 S.E. (2d) 470 (1972). Vereen's wife testified that she and Vereen were very close, that they talked about everything, and that he was in no trouble.[1] The existence of Vereen's guilty plea, about which she did not know, could have been viewed by the jury as evidence that Vereen and his wife were not as close as she claimed. Such evidence was relevant to the issue of damages. Its admission was not an abuse of discretion. *See Crowley v. Spivey*, 285 S.C. 397, 329 S.E. (2d) 774 (Ct. App. 1985).

We do not reach the representatives' argument that the testimony of Vereen's parents could have proved his ability and willingness to provide for his wife, and therefore should have been admitted. Because his representatives made no offer of proof, we do not know whether the parents' testimony could have established these facts. Unless a party includes an offer of proof in the record, there is nothing for this court to review. *Honea v. Prior*, 295 S.C. 526, 369 S.E. (2d) 846 (Ct. App. 1988). Accordingly, we do not reach the issue of whether the trial judge erred in excluding the parents' testimony.

### III.

Vereen's representatives also contend the circuit judge erred in failing to charge the statutory mortality table, S.C. Code Ann. § 19-1-150 (1976). This charge was not requested

---

[1] Although Vereen's wife subsequently said she did not deny he had a criminal record, but instead that she knew of none, for all the jury knew she and Vereen were very close and discussed everything, and she was correct that no criminal record existed. Evidence of the guilty plea was properly admitted to refute her assertion.

until all other charges had been given. The judge refused to give the charge, indicating he would have done so had the request been timely, but that the request was too late. Counsel agreed he should have requested it sooner, but that he failed to call it to the judge's attention.[2]

Had counsel properly objected to the refusal to charge, reversal still would not be warranted as there is no proper exception on this point. The pertinent exception points to error in refusing to charge only on the ground that the mortality table should have been charged because it is relevant in a wrongful death action. The trial judge, however, did not refuse the charge on relevance grounds. The judge refused the charge because it was not timely requested. There is no exception alleging error on this ground.

The purpose of an exception is to present some distinct principle of law which the appellant claims has been violated in such a manner that the point is readily recognized and properly reviewed. *Hudson v. Hudson,* 294 S.C. 166, 363 S.E. (2d) 387 (Ct. App. 1987). This court will not address issues not raised by proper exception. *Id.; cf. Glover v. North Carolina Mutual Life Insurance Co.,* 295 S.C. 251, 257, 368 S.E. (2d) 68, 72 (Ct. App. 1988) (court will not reverse trial court on ground different from that stated in exception).

## IV.

Finally, Vereen's representatives contend the circuit judge erred in directing a verdict against them on the survival action. They argue the proffered testimony of an officer on the scene who saw an eight foot trail of blood leading away from Vereen's body and who observed Vereen's hands clutching his chest with leaves and pine needles on them, as well as a photo-

---

[2] The precise dialogue was as follows:

THE COURT: Anything else?
MR. INMAN: I believe we might better charge the Mortality Table—we've got a copy of it—on his life expectancy.
THE COURT: Well, I would have charged it had you—
MR. INMAN: I agree. I should have.
THE COURT: But I think the point comes a bit late, Mr. Inman.
MR. INMAN: I simply looked over it, Your Honor. We have a copy here. And I just failed to call it to your attention.
THE COURT: Well, I'm not going to charge the [Mortality] Table at this time. All right. Bring [the jury] back in.

graph showing how the hands were positioned, constituted sufficient circumstantial evidence to preclude a directed verdict.

A motion for directed verdict should not be granted when the evidence, viewed in the light most favorable to the nonmoving party, is susceptible of more than one reasonable inference. *Grego v. South Carolina National Bank*, 283 S.C. 546, 324 S.E. (2d) 94 (Ct. App. 1984). If there is any evidence from which a jury could reasonably conclude a decedent experienced conscious pain and suffering, the issue must be submitted to the jury. *See Croft v. Hall*, 208 S.C. 187, 194-95, 37 S.E. (2d) 537, 540 (1946).

A reasonable jury could conclude from the proffered evidence that Vereen lived long enough to crawl eight feet from the point of the shooting and attempted to cover his wound with his hands. They could also infer that anyone who lived long enough to do these things lived long enough to experience conscious pain and suffering before his death. The directed verdict, therefore, should not have been granted.

For the reasons stated, we affirm the judgment of the circuit court directing a verdict for Liberty Life on the survival action, denying the motions of Vereen's representatives for a directed verdict, judgment notwithstanding the verdict, and a new trial on the issue of Liberty Life's liability for wrongful death, and his rulings admitting and excluding the disputed evidence. We reverse the judgment granting a directed verdict to Canteen and Martin on the survival claim and remand for a new trial on that claim.

Affirmed in part, reversed in part and remanded.

GARDNER, J., and LITTLEJOHN, Acting J., concur.