**E.A. PRINCE & SON, INC., Plaintiff,**

v.

**SELECTIVE INSURANCE COMPANY OF THE SOUTHEAST, Defendant.**

Civ. A. No. 8:92–2675–20.

United States District Court,
D. South Carolina,
Anderson Division.

April 13, 1993.

J. Calhoun Pruitt, Jr., Anderson, SC, for plaintiff.

Bradford N. Martin and Nancy Hyder Robinson, Greenville, SC, for defendant.

## ORDER

HERLONG, District Judge.

This matter is before the court on the motion for summary judgment filed by the defendant, Selective Insurance Company of the Southeast ("Selective"). Selective seeks summary judgment on three grounds: (1) that the actions of Tom W. Taylor, Jr. ("Taylor") were outside the scope of his agency, or were committed after his agency terminated; (2) *res judicata;* and (3) election of remedies.

This case arises from the dealings of the plaintiff, E.A. Prince & Son, Inc. ("E.A. Prince"), with Taylor, a former agent for Selective. E.A. Prince paid to Taylor Twelve Thousand, Three Hundred Forty–Four Dollars ($12,344.00) in a check dated January 31, 1990, for an automobile fleet insurance policy to be issued by Selective. E.A. Prince also paid Taylor Ten Thousand, Seven Hundred Twenty–Four Dollars ($10,724.00) in a check dated September 12, 1990, for a workers' compensation policy to be issued by Selective. Taylor never forwarded the premiums to Selective. He kept the money totalling Twenty Three Thousand, Sixty–Eight Dollars ($23,068.00) for his own use. Therefore, the insurance policies were never issued.

On November 5, 1991, E.A. Prince filed an action against Taylor based on the claims in this action and other claims. That case was filed in the South Carolina Court of Common Pleas for Anderson County.

E.A. Prince has also made a claim in the bankruptcy proceeding of Taylor's brother and his insurance agency, Harold Clinton Taylor d/b/a Zeigler & Taylor Company. The proof of claim in that proceeding was filed on December 27, 1991.

Additionally, E.A. Prince was involved in an action against Taylor's bonding company.[1] By an order filed May 6, 1992, E.A. Prince received a judgment in the amount of Seven Thousand, Five Hundred Thirty Dollars and Sixty–One Cents ($7,530.61); which was 75.-252% of the Ten Thousand Dollars ($10,-000.00) plus interest paid into that court by the bonding company. It appears that this money has been paid to E.A. Prince.

On August 27, 1992, E.A. Prince filed this action in the South Carolina Court of Common Pleas for Anderson County. The complaint asserts claims for breach of contract, conversion, and fraud. On September 24, 1992, Selective removed the case to this court.

By an order entered January 22, 1993, E.A. Prince obtained a judgment in the state court action against Taylor in the amount of Forty–Three Thousand, Six Hundred Twelve Dollars ($43,612.00).[2] This judgment has not been satisfied.

In its pleadings, Selective asserts that Taylor's agency was terminated effective September 1, 1990, for new business and effective November 1, 1990, for repeat business. Selective further asserts that Taylor's actions were outside the scope of his authority such that it cannot be liable.

**1. Scope of Agency**

Selective contends that, in dealing with E.A. Prince, Taylor was acting outside the scope of his agency or his authority as an agent such that it cannot be liable. E.A. Prince argues that when it dealt with Taylor, he had either actual or apparent authority.

■ Questions of agency and an agent's authority ordinarily should not be resolved by summary judgment where there are *any* facts giving rise to an inference of an agency relationship or authority. *Fernander v. Thigpen*, 278 S.C. 140, 293 S.E.2d 424, 425

(1982). It appears that there are facts that give rise to an inference of authority.

■ The doctrine of apparent authority provides an inference of authority which precludes summary judgment. "The doctrine of apparent authority provides that the principal is bound by the acts of the agent when it has placed the agent in such a position that persons of ordinary prudence, reasonably knowledgeable with business usages and customs, are led to believe the agent has certain authority and they deal with the agent based on that assumption." *Fernander*, 293 S.E.2d at 426. A principal who places an agent in a position to commit a tortious act while apparently acting within the scope of his authority, is liable for the agent's acts. *Hester v. New Amsterdam Casualty Co.*, 412 F.2d 505, 508 (4th Cir.1969) (case involving fraud as the tortious act); *see also* Restatement (Second) of Agency § 261 (1958). It can be argued that Selective placed Taylor in a position that E.A. Prince would reasonably believe that he had the authority to collect premiums and to make representations about Selective's policies. If, in taking these actions that were within his apparent authority, Taylor committed tortious acts, Selective can be liable for these acts.

In support of its contention that Taylor acted beyond his authority in his dealings with E.A. Prince, Selective relies heavily on *Vereen v. Liberty Life Ins. Co.*, 306 S.C. 423, 412 S.E.2d 425, 429 (Ct.App.1991).[3] The facts of *Vereen* are easily distinguishable from the facts of this case. In *Vereen*, the insurance agent and a third party conspired to defraud the insurance company. The agent wrote an insurance policy on the life of Michael Vereen without his knowledge or consent. The agent forged the application. The agent and his co-conspirator created a fictitious beneficiary. Three months after the policy was issued, the co-conspirator ar-

---

**1.** The court is not aware of the date on which that action was filed.

**2.** That judgment was for the loss on the two Selective policies, totalling Twenty–Three Thousand Sixty–Eight Dollars ($23,068.00), involved in this action as well as other policies that did not relate to Selective.

**3.** Selective asserts *Vereen* supports its argument that, as a matter of law, it cannot be liable. It should be noted, however, that the issue of authority in *Vereen* was not decided on summary judgment, by a directed verdict, or on a motion for a judgment as a matter of law, but was submitted to and decided by the jury.

ranged for Vereen to be murdered. The agent then helped his co-conspirator cash the benefits check. The South Carolina Court of Appeals found, under those facts, that there was no apparent authority because the co-conspirator did not rely on any apparent authority to take the actions of producing a fraudulent claim. *Id.*, 412 S.E.2d at 429.[4] The Court of Appeals further found that the agent was acting outside of the scope of his employment. *Id.*

Selective also asserts that *Moore v. Pilot Life Ins. Co.*, 205 S.C. 474, 32 S.E.2d 757 (1945) supports its argument that an agent must be acting within his actual authority to bind his principal for the agent's tortious acts. Selective misreads *Moore.* The South Carolina Supreme Court held that the issue of authority could not be raised on appeal because it had not been raised before the trial court. *Id.*, 32 S.E.2d at 761. The South Carolina Supreme Court, however, went on to state, as *dictum,* that "[w]here a principal clothes its agent with apparent authority to act in a certain capacity, it is bound by all of the acts of such agent within the scope of *such authority.*" *Id.*, 32 S.E.2d at 762 (emphasis added). Even if this were the holding of the case, it does not support Selective's argument. Selective interprets this language to mean that the agent must be acting within his actual authority to bind the principal. The court disagrees. "Such authority" can refer only to "apparent authority." Therefore, if a principal clothes an agent with apparent authority to act in a certain capacity, it is bound by all of the acts of such agent within the scope of this apparent authority.

Selective also cites *Edwards v. Union Central Life Ins. Co.*, 193 S.C. 255, 8 S.E.2d 488 (1940) for the proposition that in a tort action, the plaintiff must show that the agent was acting within the actual scope of his authority. Although *Edwards* appears to state that rule and has not been overruled,[5] later cases do not follow the proposition of law expressed in *Edwards. See e.g. West v. Service Life & Health Ins. Co.*, 220 S.C. 198, 66 S.E.2d 816, 817 (1951) (a fraud case in-

volving an insurance agent's acting within his apparent authority); *State ex rel. McLeod v. C & L Corp., Inc.*, 280 S.C. 519, 313 S.E.2d 334, 339–40 (Ct.App.1984) (a case involving misrepresentations of a salesman); *Hester v. New Amsterdam Casualty Co.*, 412 F.2d 505, 508 (4th Cir.1969) (a fraud case based on apparent authority). The court finds that the later cases express the better reasoned law.

*West* is particularly instructive in resolving the scope of agency issue presented by Selective. In *West*, the plaintiff purchased a health and life insurance policy. She became sick and incurred medical expenses, some of which were covered by the insurance policy. The agent, in violation of the insurance company's practices, forged the plaintiff's name on receipts indicating that the agent had paid the plaintiff's claims. The agent presented the forged receipts to the insurance company, and received payment for the amounts claimed. The agent converted the money to his own use. The plaintiff never received payment for the medical expenses. The South Carolina Supreme Court found that:

It is a general doctrine of law that although the principal is not ordinarily liable ... in a criminal suit, for the acts or misdeeds of his agent, unless, indeed, he has authorized or co-operated in them, yet he is held liable to third persons in a civil suit for the frauds, deceits, concealments, misrepresentations, negligences, and other malfeasances and omissions of duty of his agent in the course of his employment, although the principal did not authorize or justify or participate in, or indeed know of such misconduct, or even if he forbade the acts or disapproved of them.

*West*, 66 S.E.2d at 817. This rule "is founded upon public policy and convenience, for in no other way could there be any safety to third persons in their dealings with the principal ... through the instrumentality of agents." *Id.* Also, "the principal holds out his agent as competent and fit to be trusted, and thereby, in effect, he warrants his fideli-

---

4. Not only was there no reliance by the co-conspirator, but no other third party relied on the agent's having apparent authority to act.

5. In fact, the court cannot find a single case that cites *Edwards.*

ty and good conduct in all matters within the scope of the agency." *Id.*

Selective argues apparent authority is not sufficient to impose liability on it. Under this argument, E.A. Prince must show that Taylor had apparent authority *and* that he was acting within the scope of his employment. The court does not agree that the proof of both apparent authority and scope of employment are required to hold Selective liable. Apparent authority and scope of employment are separate theories, each of which could be a basis of liability. They are not two prongs of a single theory.

■ Selective asserts that Taylor was acting for his own criminal purposes such that he was acting outside the scope of his employment and that this prevents it from being liable. Selective properly states the rule of law that a principal is generally not liable when an agent is acting for his own independent purposes, wholly disconnected from the furtherance of his employer's business, because the agent is acting outside of the scope of his employment. *See Crittenden v. Thompson–Walker Co., Inc.,* 288 S.C. 112, 341 S.E.2d 385, 387 (Ct.App.1986); Restatement (Second) of Agency § 216, cmt. a (1958). That rule is based upon the theory of *respondeat superior,* which requires a person to act within the scope of his employment to bind his employer for his tortious acts. The fact, however, that Taylor may have been acting for his own criminal purposes does not automatically relieve Selective of liability.

■ When an agent has apparent authority to act, liability may be based on that apparent authority, and there is no requirement that the agent act within the scope of his employment. *See* Restatement (Second) of Agency § 216, cmt. a (1958); Restatement (Second) of Agency § 257, cmt. a (1958). Liability for conduct that is apparently authorized does not depend upon the theory of *respondeat superior,* but upon the same reasoning underlying liability upon apparently authorized contracts, that the principal's manifestations induced the third party to deal with the agent. Restatement (Second) of Agency § 257, cmt. a (1958). Although South Carolina courts have not expressly adopted these rules stated in the Restate-

ment (Second) of Agency which provide that liability for acts taken within an agent's apparent authority do not rely on the scope of his employment, they are supported by South Carolina law. *See Vereen v. Liberty Life Ins. Co.,* 306 S.C. 423, 412 S.E.2d 425, 429 (Ct.App.1991). In *Vereen,* the South Carolina Court of Appeals examined the apparent authority question and determined that no apparent authority existed under the facts of that case. It then addressed the "further argument" for liability because the agent was acting within the scope of his employment. *Id.,* 412 S.E.2d at 429. The South Carolina Court of Appeals addressed apparent authority and scope of employment as separate theories, not as two prongs of a single question, as Selective asserts.

■ The general rule with regard to apparent authority is that "the principal is bound by the acts of the agent when it has placed the agent in such a position that persons of ordinary prudence, reasonably knowledgeable with business usages and customs, are led to believe the agent has certain authority and they deal with the agent based on that assumption." *Fernander v. Thigpen,* 278 S.C. 140, 293 S.E.2d 424, 426 (1982). For there to be liability under this rule, there must be (1) a manifestation by the principal (2) that leads a reasonable third party to believe that the agent has authority, and (3) the third party relies to his detriment on this belief in dealing with the agent. This South Carolina rule mirrors the rule from the Restatement (Second) of Agency which states that "[a] ... principal is subject to liability for torts which result from reliance upon, or belief in, statements or other conduct within an agent's apparent authority." Restatement (Second) of Agency § 265(1) (1958). A principal who puts an agent in a position which enables the agent, while apparently acting within his authority, to commit a tort upon a third person is subject to liability to that third person for the tort. Restatement (Second) of Agency § 261 (1958). The principal is subject to liability although the principal is entirely innocent and has received no benefit from the transaction. Restatement (Second) of Agency § 261, cmt. a (1958). The principal's liability is based upon the fact

that the agent's position facilitated the consummation of the tort, in that from the point of view of the third person the transaction seemed regular and the agent appeared to be acting in the ordinary course of his business and within his authority. Restatement (Second) of Agency § 261, cmt. a (1958).

■ In situations of apparent authority, the motives of the agent are immaterial unless they are known by the third party with whom the agent dealt. Restatement (Second) of Agency § 265, cmt. a (1958). A principal who would be subject to liability to a third person for the torts of an agent apparently acting for the principal is not relieved of liability by the fact that the agent was acting entirely for his own purposes, unless the third person had notice of the agent's purposes. Restatement (Second) of Agency § 262 (1958). These rules on apparent authority expressed in the Restatement (Second) of Agency are consistent with the law of South Carolina. *See West*, 66 S.E.2d at 817. An important rationale for the holding in *West* was protecting the safety of third parties dealing with a principal through an agent. *Id.*, 66 S.E.2d at 817. These rules accomplish the goal of protecting the innocent third party.[6] There is no evidence in the record that E.A. Prince had notice or knowledge of Taylor's criminal purposes.

Selective asserts that Taylor acted beyond his authority as to the workers' compensation policy because the check for the premium was dated after his agency was terminated. However, "[a]s a general rule, a revocation of authority does not become effective as between the principal and third persons subsequently dealing with the agent as such until [the third persons] receive notice thereof." *Carr v. Moragne*, 136 S.C. 218, 131 S.E. 424, 427 (1926). There is no evidence in the record that E.A. Prince received notice of the termination of the agency relationship.

Therefore, any argument based on a revocation of authority must fail.

■ Under the facts of this case, a reasonable third person could have believed that Taylor was acting within his authority. This inference that Taylor had apparent authority precludes summary judgment and requires that the jury determine whether Taylor had apparent authority and if so, whether he acted within the apparent authority. *See Fernander v. Thigpen*, 278 S.C. 140, 293 S.E.2d 424, 425 (1982).

### 2. Res Judicata

■ Selective asserts that this action is barred by the theory of *res judicata*.[7] *Res judicata* bars a subsequent suit if the parties are the same or their privies, the subject matter is the same, and the precise point is decided or might have been decided in the prior litigation. *Branning v. Morgan Guar. Trust Co.*, 739 F.Supp. 1056, 1064–65 (D.S.C. 1990). Selective maintains that the judgment in the previous action, against Taylor, bars this action. However, this argument is not supported by the law. "A judgment on the merits *in favor of* the agent is a bar to an action against the principal for the same cause, because the principal's liability is predicated upon that of the agent. But a judgment *against* the agent is not conclusive in an action against the principal." *Rookard v. Atlantic & C. Air Line Ry. Co.*, 84 S.C. 190, 65 S.E. 1047, 1047 (1909) (emphasis added); *see also Jenkins v. Atlantic Coast Line R. Co.*, 89 S.C. 408, 71 S.E. 1010, 1012 (1911). This case clearly presents the second situation addressed in *Rookard*, a judgment against the agent. Therefore, the prior litigation is not conclusive as to Selective's liability. Under the facts before the court, the theory of *res judicata* does not apply and is not a bar to this action.

---

**6.** Additionally, courts in jurisdictions other than South Carolina, when ruling in cases that are factually similar to this case, have applied the rules from the Restatement (Second) of Agency to allow liability based upon apparent authority. *See e.g. Dudley v. Estate Life Ins. Co.*, 220 Va. 343, 257 S.E.2d 871 (1979) (case involving fraud); *Lucas v. Liggett & Myers Tobacco Co.*, 50 Haw. 477, 50 Haw. 506, 442 P.2d 460 (1968)

(case involving conversion); *Billups Petroleum Co. v. Hardin's Bakeries Corp.*, 217 Miss. 24, 63 So.2d 543 (1953) (case involving conversion).

**7.** For purposes of this argument, Selective concedes that Taylor was its agent at all times relevant to this action.

### 3. Election of Remedies

Selective asserts that the doctrine of election of remedies bars E.A. Prince from bringing this action. The South Carolina Court of Appeals has summarized the doctrine of election of remedies as follows:

> The doctrine of election of remedies involves a choice between two or more different and coexisting modes of procedure and relief afforded by law for the same injury. Its purpose is to prevent double redress for a single wrong. Application of the doctrine should be confined to cases where double compensation of the plaintiff is threatened. When an identical set of facts entitle the plaintiff to alternative remedies, he may plead and prove his entitlement to either or both; however, the plaintiff may not recover both. This rule rests on the principle that the plaintiff should have a full opportunity to prove his claim to some form of relief, but he should not receive a double recovery. The invocation of one remedy constitutes an election of remedies that will bar another remedy consistent therewith where the suit upon the remedy first invoked reached the stage of final adjudication.

*Save Charleston Foundation v. Murray,* 286 S.C. 170, 333 S.E.2d 60, 63–64 (Ct.App.1985) (citations omitted).

E.A. Prince has obtained a judgment against Taylor and has obtained and satisfied a judgment for part of its loss from Taylor's bonding company. Selective argues that these actions are an election of remedies and bar E.A. Prince from prosecuting the present claims. The court does not agree.

When tortious acts are committed by an agent, there are two guiding principles which are well established in South Carolina: "(1) Where one acting as agent for another, within the scope of his agency, commits a tort, both the principal and the agent are joint tort feasors; and (2) the injured party is not obligated to join both tort feasors in his action, but he may sue either singly." *Causey v. Burgess,* 236 F.Supp. 326, 327 (D.S.C. 1964); *Little v. Robert G. Lassiter & Co.,* 156 S.C. 286, 153 S.E. 128, 128 (S.C.1930). Also, a principal is liable on contracts entered by an agent who was acting within his agency.

*See Southern Ry. Co. v. Strachan Shipping,* 624 F.Supp. 218 (D.S.C.1985). Therefore, if Taylor were acting within the scope of his agency or was apparently acting within the scope of his agency, Selective could be liable.

A plaintiff has the right to sue joint tort feasors in separate actions. *McWhirter v. Otis Elevator Co.,* 40 F.Supp. 11, 13 (D.S.C.1941). Selective's argument that E.A. Prince has made an election of remedies seems contrary to this right to sue jointly and severally liable parties in separate actions. Under Selective's argument, if two separate actions were filed on the same day against joint tort feasors, when a judgment is rendered in one of the cases, the other case must be dismissed. The court does not agree that this is the law.

The South Carolina Supreme Court has clearly indicated that separate actions can be prosecuted to a judgment in each. In a case involving a railroad accident, the South Carolina Supreme Court stated "[w]hile the plaintiff had the right to sue both tort-feasors in separate actions, he is only entitled to a single satisfaction, although having two separate judgments." *McKenzie v. Southern R. Co.,* 113 S.C. 453, 102 S.E. 514, 515 (1920). Also, in another case involving a railroad accident, the South Carolina Supreme Court stated:

> [the] plaintiff could have sued both companies at the same time for the same cause, and he could have sued them in the same or in different actions; and, if he had sued them separately, neither action could have been pleaded in abatement of the other. And he could have recovered judgment in both, though he could have had but one satisfaction.

*Jenkins v. Atlantic Coast Line R. Co.,* 89 S.C. 408, 71 S.E. 1010, 1012 (1911). It appears, however, that the clearest statement of the law on the election of remedies issue presented in this action is from a case involving a damages claim for trespass decided approximately one hundred seventy-five years ago. In that case, the South Carolina Supreme Court, in reversing the trial court's bar on the subsequent action, stated:

It is unreasonable, that a party should have more than one satisfaction for the same injury; and although there may be several wrong doers, and the party injured may maintain actions against them severally, yet, *each* is liable for the whole entire damage sustained; and the law, abhorring a multiplicity of actions, will presume, that the Jury in any one of the actions would give him damages to the extent of the injury, and forbids that he should prosecute a further remedy, after there has been a satisfaction. But until there is a satisfaction of the damages assessed, a recovery could not operate as a bar to an action against another of the joint [tort feasors]; because it is possible, from the insolvency of the first defendant, and various other causes, the plaintiff might never be able to obtain his redress. It was therefore clearly incumbent on the defendant to have averred a satisfaction, in his plea of former recovery.

*Hawkins v. Hatton*, 1 Nott & McC. 318 (S.C.1818) (emphasis in original).

■ These cases clearly adhere to the underlying purpose of the doctrine of election of remedies, which is to prevent a double recovery by the plaintiff. To achieve this purpose, Selective argues that the court should preclude the recovery of multiple judgments. The law in South Carolina, however, as stated in the cases cited above, allows the recovery of multiple judgments, but allows only one satisfaction of the damages assessed in those judgments. In this case, E.A. Prince has not satisfied its judgment against Taylor. The judgment against the bonding company, although satisfied, was not for the full amount of the damages. Therefore, because Selective has not alleged a complete satisfaction and has not presented evidence of such a satisfaction, the prior judgments are not a bar to this action.

Although the satisfaction of the judgment for part of E.A. Prince's damages is not a bar to this action, at trial Selective may show "for the purpose of mitigating or reducing damages, that the same injury or wrong has been partially compensated by a payment made by another joint tort feasor, by presenting evidence of such a payment, and such

evidence has been held proper to be considered in fixing the amount of damages." *McWhirter v. Otis Elevator Co.*, 40 F.Supp. 11, 13 (D.S.C.1941).

Based on the foregoing, the doctrine of election of remedies does not apply in this case and is not a bar to this action.

For the reasons stated above, it is

ORDERED that the defendant's motion for summary judgment is denied.

IT IS SO ORDERED.